**VESELKA et al. v. FORRES. (No. 6977.)**

(Court of Civil Appeals of Texas. Austin. March 24, 1926.)

**1. Exchange of property** ⊚⟹**8(1)—On defendants' admission that only reason for failing to carry out exchange was plaintiff's refusal to take deed conveying whatever interest they may have had, all other defenses became immaterial.**

In suit for liquidated damages for breach of contract to exchange property, all defenses such as duress and fraud become immaterial on vendors' admission that only reason for failure to carry out contract was because vendee would not take deed conveying whatever interest they may have had.

**2. Pleading** ⊚⟹**311—Allegations of execution of attached contract for exchange of property, breach by defendants, and requesting recovery according to its terms held to authorize damages for its breach.**

Petition in action for damages for breach of contract to exchange property alleging execution of contract, attached to pleadings by reference, its breach by defendants, and seeking recovery of damages according to its terms, *held* sufficient to authorize judgment for damages prescribed in contract.

**3. Vendor and purchaser** ⊚⟹**133.**

Agreement to convey land by warranty deed with clear title was agreement to convey land in "fee simple," that is, to convey land in its entirety, without incumbrance or conflicting claims of others.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Fee Simple.]

**4. Vendor and purchaser** ⊚⟹**133—Contract to convey a clear "title" by warranty deed is not satisfied by tender of warranty deed showing outstanding interest in others (citing Words and Phrases, Title).**

Contract to convey a clear "title" by warranty deed imports conveyance free of all incumbrances, and is not satisfied by tender of warranty deed showing some interest outstanding or incumbrance by claims of others (citing Words and Phrases, Title).

**5. Vendor and purchaser** ⊚⟹**129(1)—Terms "good title" and "clear title" require both legal and equitable title of land free from litigation, palpable defects, or grave doubts.**

Terms "good title" and "clear title" in contract to convey land are synonymous, and mean that land should be free from litigation, palpable defects, and grave doubts, and should consist of both legal and equitable titles (citing Words and Phrases, First and Second Series, Good Title).

[Ed. Note.—For other definitions, see Words and Phrases, Clear Title.]

**6. Vendor and purchaser** ⊚⟹**129(1)—Contract to convey clear title held breached by outstanding interest in third party which vendors could not obtain.**

Outstanding undisputed interest in third party which vendors could not and did not obtain necessarily breached contract to convey clear title to land.

**7. Damages** ⊚⟹**76—Whether sum in contract to be paid by party in default is liquidated damages or penalty must be determined from instrument and intention of parties gathered from surrounding circumstances.**

Whether stipulated sum in contract to be paid by party in default for breach is for liquidated damages or for penalty must be determined from instrument itself, and intention of parties as gathered from surrounding circumstances.

---

⊚⟹For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**8. Damages ⊕78(1)—Agreement in contract to exchange property that party in default will pay other party $1,000 held intended as stipulated damages.**

Provision in contract for exchange of personal property and going business for land that party in default shall pay $1,000 in cash to other party *held* intended as stipulated damages.

**9. Damages ⊕79(1)—Contract to exchange personal property and going business for land presents no satisfactory rule for ascertaining damages indicating that stipulated damages for breach were intended as liquidated damages.**

Contract to exchange personal properties and going business for land presents no satisfactory rule for ascertaining damages in case of breach indicating that amount stipulated to be paid by party in default in case of breach was intended as liquidated damages.

**10. Damages ⊕79(1) — Circumstances surrounding contract for exchange of personal properties and going business for land may be considered in determining whether amount stipulated in case of breach was intended as liquidated damages.**

Circumstances surrounding parties when entering into contract to exchange personal properties and going business for land may be considered to ascertain if any satisfactory rule of damages was known to parties at time they stipulated for damages in case of breach, and to determine if such amount was intended as liquidated damages.

**11. Fraudulent conveyances ⊕47—Bulk Sales Law held not to invalidate contract for exchange of business, wherein seller agreed to pay all outstanding debts, which he was able and willing to do (Rev. St. 1925, art. 4001 et seq.).**

Bulk Sales Law did not invalidate contract for exchange of going business for land as between parties where seller agreed to pay all outstanding debts against business which testimony showed he was ready, able, and willing to do.

Appeal from District Court, Fayette County; M. C. Jeffrey, Judge.

Suit by Charles F. Forres against Louis Veselka and others. Judgment for plaintiff, and defendants appeal. Affirmed.

Grobe & Miller, of Columbus, for appellants.

Moss & Lowrey, of La Grange, for appellee.

BLAIR, J. Appellee, Charles Forres, sued appellants, Louis, Joe and Emily Veselka, to recover $1,000 as liquidated damages alleged to be due as the result of a breach of a written contract whereby appellants agreed to sell and to convey to him, on and about January 1, 1924, by "warranty deed with clear title," the 112 acres of land described in the contract. Appellee attached and made the contract a part of his pleading, alleging that he stood ready, willing, and able to receive "warranty deed with clear title," and to pay

the consideration and carry out his part of the contract on or about January 1, 1924, but that appellants failed and refused and still refuse to execute such a deed, whereby they became liable and bound to pay him the sum of $1,000 as liquidated damages provided in the contract. Appellee also filed certain alternative pleadings, but they become immaterial since the trial court construed the contract to provide for liquidated damages in the event of its breach.

Appellants answered by a general demurrer, several special exceptions to the pleadings, and a general denial, and further specially pleaded that appellee fraudulently procured the contract of purchase and sale; that he got appellants, Louis and Joe Veselka, drunk, and overreached them, and caused them to execute the contract while drunk and not knowing the contents thereof, and that he caused the said Emily Veselka to execute the contract under duress; that the contract was executed in violation of the Bulk Sales Law, and that appellee himself breached the contract because he refused to accept a warranty deed conveying whatever title appellants had in the land as a compliance with the contract; and alleged generally that appellee continually failed and refused to do the things incumbent upon him, and therefore breached the contract, and is estopped to now claim a breach by appellants.

The trial was to the court without a jury, and judgment was rendered for appellee against appellants for $1,000 as liquidated damages, with interest at 6 per cent. from date of judgment. The appeal is duly perfected from this judgment.

By the contract appellants agreed to sell and convey to appellee, by "warranty deed with clear title," on or about January 4, 1924, 112 acres of land in two tracts at an agreed and fixed price of $55 per acre. In return for the land they were purchasing the cold drink business of appellee, situated in the town of La Grange, the fixtures being specifically described in the contract, item by item, and for which appellants were to allow on the purchase price of the land $2,500; that the stock in the business was to be inventoried when the transaction was consummated, and for which appellee was to be allowed as cash the cost value of the stock, and he was to pay the balance remaining over and above these items in cash.

Appellants give the following as their sole reason for not carrying out the contract.

Appellant Louis Veselka testified:

"As to what it was we wanted to deed—he wanted to give him a deed—he wanted clear deed. We had two tracts. We wanted to give him a deed to the two tracts. We did not want to give him a clear deed until the minor reached his age. One tract we could give him a clear deed, and the other we could not. The one in which we could not give him a clear deed was

the one in which Joe Maretka, the minor, was interested. * * * The only reason why we didn't deed that land to Mr. Forres was on account of the minor owning an interest and not signing. If it had not been for that, my brother and sister and I would have carried out our written agreement with Mr. Forres. * * * The only reason why this contract was not closed is because we could not get Joe Maretka to agree to have his disabilities removed. There is no other reason that caused us not to carry out this contract. * * * That was the time when I, as well as Mr. Forres, was advised that Joe Maretka had an interest, and we had to have his disabilities removed. That is the reason Charlie Forres did not take the land, because we could not give good clear title. * * * The only reason we did not comply with the agreement was on account of this minor, Joe Maretka, having an interest in the land. * * * My brother and sister and I bought out all the balance of them, except Joe Maretka, and he still owns an interest in this land described in this agreement. He refused to have his disabilities removed. We can't deliver the deed that we contracted to give."

A letter from Louis Veselka, dated January 7, 1924, reads in part:

"That was Mr. Forres' mistake, not ours, he had right to overlook the deeds what kind—homestead is in deeds. Now he don't have to complained us against anything. But af he want have trouble, let him sue us. We take care of ours lawyer. And another thing, we are not responsible for that minor which he is not satisfied to signet disebility, we can't help that."

Appellant Emily Veselka testified in part:

"Joe and Louis and I knew that Joe had an interest in that land. My brothers Joe and Louis both knew that Joe Maretka had an interest in this land that we were trying to sell. After we had all made this contract here, and finally did not sell the land, the reason we didn't give Mr. Forres the deed was that he didn't want to take such title as we wanted to give him. He did not want to take such a title. We signed the contract and agreed to sell the land. Mr. Forres did not want to take the kind of deed we all offered him. My two brothers and I wanted him to take a deed just from us three. If he had taken that deed, we would have sold him the farm. * * * I did not sign any deed conveying this land to Charlie Forres. I claim that Charlie Forres backed out; I don't know if he claims it, but I claim it. I claim it because he wouldn't take a deed from us three. * * * Joe and Louis, my two brothers, and I were ready to give a deed, just signed by us three. Joe Maretka wasn't signing any deed with us, but he promised to. He was a minor—he would sign it. As to whether he was over nineteen years of age, I don't know how old he was; I think about nineteen."

Appellant Joe Veselka testified in part:

"Louis Veselka, my sister and I, wanted to give him a deed to this land, ourselves. Mr. Forres wanted a deed from us three and also Joe Maretka. That is the reason the deal did not go through, we could not deliver that deed. * * * Anyway, we could not get Joe Maret-

ka's disabilities removed, or get his interest in the place, and that was the reason the trade didn't go through."

[1] In view of this testimony we think the defenses of fraud, overreaching, and duress pleaded by appellants went out of the case. That is, since appellants admit that the only reason for their failure to carry out the contract was because appellee would not take their deed conveying whatever interest they may have had in the land, the other defenses became immaterial; and they are limited to the following defenses which represent the issues on this appeal:

First. Did the offer by appellants to deliver their warranty deed to the 112 acres of land conveying whatever interest they had sufficiently comply with the terms of the contract to convey the land by "warranty deed with clear title"?

Second. Did the contract provide for the payment of $1,000 as liquidated damages in the event of a breach of the contract to the party not breaching it?

Third. Was the contract void because violative of the Bulk Sales Law?

[2] Even if appellants had the right to insist upon their other defenses notwithstanding the testimony quoted, the trial court did not sustain them, and the testimony sufficiently supports its judgment in this respect. We also overrule all assignments with respect to the sufficiency of appellee's pleading. He alleged the execution of the contract, attached it as a part of his pleadings by reference, alleged its breach by appellants, and sought a recovery of the damages fixed by its terms. These pleadings are sufficient to authorize the judgment rendered. Warren v. La Salle Co. (Tex. Civ. App.) 262 S. W. 527.

[3, 4] As to the first question, we think it clear that appellants agreed to convey to appellee by a warranty deed the 112 acres of land in fee simple; and by the term "fee simple" we mean that they intended to convey the land in its entirety without any incumbrance or without any conflicting claims of any other person against it. They admit that they did not do so because Joe Maretka owned an interest in the land which they could not procure. The general rule of law with respect to this is that, where one contracts to convey by deed a clear title to land, it is not satisfied by tendering a warranty deed showing some interest outstanding, or that the land is in some way incumbered by the claims of others. We think the language "warranty deed with clear title" simply means that appellants agreed to convey a clear title to the land, free of all incumbrances. 11 Corpus Juris, 833; Roberts v. Bassett, 105 Mass. 409; 8 Words and Phrases, p. 6980, defines the word "title" as follows:

"The word 'title,' when used in reference to title to real estate, implies an estate in fee. Nothing short thereof is a complete title."

[5] The terms "good title" and "clear title" are synonymous, and mean that the land should be free from litigation, palpable defects, and grave doubts, and should consist of both legal and equitable title. Words and Phrases, First and Second Series, "Good Title"; McLaughlin v. Wheeler, 47 N. W. 816, 1 S. D. 497; Whittier v. Gormley, 86 P. 726, 3 Cal. App. 489; Rabinowitz v. North Tex. Realty Co. (Tex. Civ. App.) 270 S. W. 579.

[6] We have carefully examined the contract, and find that it nowhere indicates that the appellants were to convey only such interest as they may have owned in the land at the time of the execution of the contract, but clearly indicates that they intended to convey the whole of the title to it and a clear title to it. The fact that there was outstanding an undisputed interest in another party whom they did not and could not obtain a conveyance from to appellee necessarily breached the contract.

The second question relates to a construction of paragraph 7 of the contract to ascertain if it provides that the $1,000 therein stipulated was intended by the parties as liquidated damages. It reads:

"That it is further mutually agreed and made and considered binding upon both parties of the first and second part that in the event that the parties of the second part for any reasons whatsoever fail to keep and perform any of the agreements hereinbefore mentioned and described, they the parties of the second part agree to pay unto the party of the first part the sum of one thousand and no/100 dollars ($1,-000.00), in cash money, and in the event the party of the first part for any reasons whatsoever fails to keep and perform any of the agreements hereinbefore mentioned and described, he the party of the first part hereby agrees and binds himself to pay unto the parties of the second part the sum of one thousand and no/100 dollars ($1,000.00) in cash money, and both parties reserve the right to each other to attach any of the property hereinbefore conveyed by each other, in the event either of the parties herein mentioned declares a breach of this contract."

[7, 8] The trial court construed the language to mean that the parties intended the $1,000 should represent liquidated damages in the event of a breach of the contract by either of the parties. A great deal has been written concerning this question, and we will not go into a lengthy discussion of all of the authorities. It may be stated as a general proposition that, in ascertaining whether the sum stipulated in the contract to be paid by either party in default to the other for breach thereof is for liquidated damages, or for a penalty, it must be determined from the instrument itself and the intention of the parties thereto, as gathered from the circumstances surrounding its execution. It is reasonably clear to our minds that the parties intended by the language, "for any reason whatsoever shall fail to keep and perform any of the agreements hereinabove mentioned and described, they the said party [breaching] agree to pay unto the party [not breaching] $1,000 in cash," to bind themselves to pay that sum as stipulated damages. The tests to determine contracts of this character are varied, and many of them are difficult to apply.

In 1 Pomeroy's Equity Jurisprudence (4th Ed.) p. 440, it is said:

"The question whether a sum thus stipulated to be paid is a penalty or is liquidated damages is often difficult to determine. It depends, however, upon a construction of the whole instrument, upon the real intention of the parties as ascertained from all the language which they have used, from the nature of the act to be performed, * * * from the consequences which naturally result from a violation of the contract, and from the circumstances generally surrounding the transaction. * * * It is well settled, however, that if the intent is at all doubtful, the tendency of the court is in favor of the interpretation which makes the sum a penalty."

Another rule applied to ascertain whether the contract stipulates for liquidated damages or for a penalty is to determine whether the damages stipulated at the time of the contract are such as are ascertainable by a satisfactory and known rule.

[9] Applying these tests to the case at bar, it becomes apparent that no satisfactory rule was open to the parties whereby they could ascertain the amount of damages in case of a breach of this contract.

[10] If the contract had been solely for the sale of the 112 acres of land, a different question may have been presented, for the damages resulting from its breach would ordinarily, according to some authorities, be the difference in the contract price of the land and its market value on the date it should have been conveyed under the contract. Or the purchaser could have recovered the amount paid on the contract with interest and such special damages as he may have suffered, which he must allege and prove. If no consideration had been paid, then nominal damages could be recovered. Clifton v. Charles, 116 S. W. 120, 53 Tex. Civ. App. 448; Kelly v. Simon (Tex. Civ. App.) 262 S. W. 204. But the contract here is one for the exchange of personal properties and a going business on the one hand, and for land on the other hand. The failure to take over appellee's business no doubt occasioned damages, the extent of which could not be established by any ordinary rule known to the parties. The appellee probably made no arrangements to continue it. He may have arranged to go into another business by reason of the contract. All of these are circumstances surrounding the parties when the contract was made and may be taken into consideration to ascertain if any satisfactory rule of damages was known to the parties at the time the $1,000

stipulation was written into the contract, and to ascertain if the parties intended it to represent liquidated damages in case of a breach of contract. It is entirely reasonable for the court to have found under these facts and circumstances that the $1,000 stipulated was intended by the parties to represent liquidated damages in case of a breach of the contract, and such finding is supported by sufficient evidence, and will not be disturbed by us.

In the case of Kellam v. Hampton, 124 S. W. 971, 58 Tex. Civ. App. 487, the court says:

"It is true that if damages are not capable of being ascertained by any satisfactory and known rule, then, if the language of the contract will admit, the reserved sum will be held to be stipulated or liquidated damages, but where the loss or injury may be easily determined by proof of market values the sum will be regarded as a penalty, and not as liquidated damages. * * * Contracts for liquidated damages are never sustained except upon the principle that parties have the right to agree in advance as to what the damages will be in case of a breach of the contract, and, if no such agreement has been made, the law will not make it for the parties."

Our opinion with respect to this question is also sustained by the following authorities: Eakin v. Scott, 7 S. W. 777, 70 Tex. 442; Collins-Decker Co. v. Crumpler (Tex. Com. App.) 272 S. W. 772; Talkin v. Anderson (Tex. Sup.) 19 S. W. 852, citing Yetter v. Hudson, 57 Tex. 610; Durst v. Swift, 11 Tex. 282.

[11] The third and remaining question is whether the contract is void as being violative of the Bulk Sales Law. Ordinarily this law does not apply as between the parties to the sale contract, but was enacted primarily for the protection of creditors. The contract in question provided that appellee was to pay all outstanding debts against his cold drink business, which he testified he was ready, able, and willing to do when appellants executed their deed to him. The trial court's judgment concluded this issue in favor of appellee, if it can be said to be an issue of fact, since appellants admit they breached the contract for another reason. The contract protects appellants against any creditors' rights under the Bulk Sales Law, since appellee agreed to pay all outstanding claims or debts. The testimony shows him able and willing to fulfill the contract in this respect. So under these facts the Bulk Sales Law has no application to the facts of this case. Freedman & Mellinger v. Maier (Tex. Civ. App.) 238 S. W. 1013; Collins-Decker Co. v. Crumpler (Tex. Com. App.) 272 S. W. 772.

Since we are holding the trial court justified in its conclusion that the $1,000 stipulated in the contract was intended as liquidated damages, the question of the admission of testimony, over appellants' objection, tending to prove that such was the intention of the parties, becomes immaterial, as harmless. There is nothing to indicate that the trial judge considered this evidence in rendering his judgment. We find no error in the judgment, and it is affirmed in all things.