FIRST AMERICAN TITLE COMPANY OF EL PASO and Coronado State Bank, Appellants,

v.

Sylvia V. PRATA, Appellee.

No. 08-88-00235-CV.

Court of Appeals of Texas, El Paso.

Dec. 27, 1989.

Rehearing Overruled Jan. 24, 1990.

Steven L. Hughes, Grambling & Mounce, James T. McNutt, James R. Dennis, Scott, Hulse, Marshall, Feuille, Finger and Thurmond, El Paso, Larry E. Meyer, Meyer & Cribbs, P.C., Houston, for appellants.

Gordon Stewart, Schwartz, Earp, McClure, Cohen & Stewart, El Paso, for appellee.

Before OSBORN, C.J., and FULLER and WOODARD, JJ.

## OPINION

OSBORN, Chief Justice.

This suit was filed by the owner of a house who lost a possible sale when the prospective buyer learned of pending condemnation proceedings which had been filed prior to the owner's purchase of the property from the Bank. The owner sued the Bank for damages under the Deceptive Trade Practices Act and the company which issued the title policy under the Texas Insurance Code. Based upon a favorable jury verdict, judgment was entered for the owner of the house. We reverse and remand the judgment against the Title Company and reverse and render judgment for the Bank.

On February 7, 1984, Coronado State Bank purchased a house which had been owned by Sylvia Prata's mother and stepfa-

ther at a sheriff's sale. The day before the foreclosure sale, El Paso Community College had filed a condemnation statement to obtain the same property. No lis pendens notice was filed and notice of the proceedings was not served upon the owner. Without any notice of the condemnation proceedings, the Bank sold the house to Sylvia Prata for $56,000.00 on May 18, 1984, and conveyed title to her by a special warranty deed. The closing was handled by First American Title Company of El Paso which issued a title commitment and a title insurance policy. The title commitment made no reference to condemnation proceedings, but the title insurance policy had an exclusion as to condemnation proceedings. The College did not serve anyone as owner of the property until Sylvia Prata was served on May 21, 1987, more than three years after the condemnation statement had been filed.

Sylvia Prata testified that the attorney for the Bank represented to her that she would receive "free and clear title" or "clear title" to the house. She said, at the closing, representatives of the Title Company represented that she was getting free and clear title to the property.

In November 1984, Prata entered into a contract to sell the house to Tito Gonzalez, a realtor who was acting as trustee for William Abraham, for $250,000.00. That contract had a proviso that it was "subject to inspection and approval of property within 20 working days." The property was never inspected for any type of approval and no sale was consummated because of the pending condemnation proceedings.

In answer to questions submitted, the jury found: (1) that the Title Company engaged in a false, misleading or deceptive act or practice or made misrepresentations in connection with the purchase of the property or in the issuance of the title policy on the property, (2) that such conduct was a producing cause of damages to Prata, (3) that the Title Company and Prata entered into an agreement based upon the title commitment instrument, (4) that the Title Company breached that agreement,

(4A) that such breach was a proximate cause of damages to Prata, (5) that Prata sustained damages of $39,000.00 for loss of a sale, $5,850.00 for loss of rental value, $2,000.00 for loss of credit reputation in the past, $9,500.00 attorney's fees in the condemnation proceeding, $2,000.00 for travel expenses and that $39,000.00 was the difference in the value of the property as received and the value it would have had if it had been as represented, $2,000.00 for inconvenience, $1,000.00 for physical pain in the past and $2,500.00 for mental anguish in the past.

With regard to the Bank, the jury found: (6) that the Bank engaged in a false, misleading or deceptive act or practice in the sale of the house, (7) that such conduct was a producing cause of any damages of Prata, (8) damages identical to those found as to the Title Company except they increased the attorney's fees for condemnation proceeding to $9,713.75, and (9) failed to find that the Bank knowingly committed the false, misleading acts or practices. The jury found Prata's reasonable attorney's fees for trial to be $19,213.75, with additional attorney's fees of $16,750.00 depending on appellate proceedings. They failed to find Prata's suit against the Bank and against the Title Company was groundless and brought in bad faith or for harassment.

Under the statute then in effect, the court trebled the damages against the Title Company and with prejudgment interest awarded a recovery of $192,685.63, and awarded a recovery of $79,735.63 against the Bank. In addition, the judgment awarded attorney's fees as found by the jury, plus interest and costs.

■ Initially, a contention is made that the trial court lacked subject matter jurisdiction and that it erred in overruling a plea in abatement. The argument presented is that there was no justiciable issue ripe for adjudication because all issues were contingent upon the condemnation case which had not been decided at the time this case was tried. The assertion is made that only an advisory judgment could be entered prior to disposition of the exercise of any right of condemnation. Appellants rely

upon *City of Garland v. Louton,* 691 S.W.2d 603 (Tex.1985) and *California Products, Inc. v. Puretex Lemon Juice, Inc.,* 160 Tex. 586, 334 S.W.2d 780 (1960). To be an advisory decision, the judicial determination must be based upon some hypothetical or contingent situation. *Freeport Operators, Inc. v. Home Insurance Company,* 666 S.W.2d 566 (Tex.App.—Houston [14th Dist.] 1984, no writ). The facts in this case were established at the time of trial and the pleadings were based upon prior conduct involving these parties and a third party condemnor. Whether the condemnation case proceeded to its final disposition would not affect the claims asserted in this case since the condemnor had not been joined as a party defendant. The Bank's Points of Error Nos. One and Two and the Title Company's Point of Error No. Fifteen are all overruled.

Turning to the merits of the case, the controlling issue is not whether the Title Company or the Bank committed the acts found by the jury, but whether such conduct was a producing cause of the damages found by the jury. For the sake of discussion only, we assume that both Appellants committed the various acts found by the jury. With that assumption, did the Title Company's acts or misrepresentations in connection with the purchase of the property by Sylvia Prata or the issuance of the title insurance policy produce damages to her, all of which arose out of her failure to sell such property to William Abraham?

■ The Title Company asserts, in its third point of error, that there was no evidence or insufficient evidence to support the jury finding of causation. The argument is made that the filing of the condemnation suit was the only producing cause of any damages sustained by Sylvia Prata. The Title Company argues that even assuming that there was a misrepresentation about the title at the time of the loan closing, the title which Prata received had absolutely nothing to do with her failure to complete the sale to William Abraham. We agree and note that the contention in this point of error perhaps should have been directed to the jury's answer to question number two as well as number five particularly since the reference to the motion for new trial relates to the answer to issue two as well as five. In any event, it is the contentions under the points and not the points themselves which are controlling. *O'Neil v. Mack Trucks, Inc.,* 542 S.W.2d 112 (Tex.1976).

The testimony with regard to the question of causation is set out verbatim from those persons who were involved in the sale. First, Sylvia Prata, the owner and prospective vendor, testified as follows:

Q (BY MR. STEWART) Did you actually, yourself, attend at some point in December, any kind of meeting concerning this property?

A Yes; I did.

· · · · ·

Q And what was your understanding of that meeting?

· · · · ·

THE WITNESS: They showed us the condemnation paper and said that the house had been condemned and I had to tell Mr. Gonzalez and I lost the sale.

Q (BY MR. STEWART) Did you—were you aware of any other reason the sale was lost?

A Because of the condemnation.

Q Were you aware of any other reason?

A No.

Next, Mr. William Abraham, the prospective purchaser, testified as follows:

Q Okay. Did those problems have anything to do with the house or solely to do with this proceeding that came to your attention?

A Well, to be honest with you I didn't. I don't think we ever got to the—to the inspection and approval stage. I think that shortly after submittal it had come to our attention or come not to my attention but to Mr. Gonzalez' attention in that there was some problem as far as condemnation that was down the road.

Q Were you interested in buying a property or was this condemnation proceeding it?

A No, sir.

Finally, Tito Gonzalez, the realtor who represented Mr. Abraham and had signed the purchase agreement in his capacity as trustee testified as follows:

Q And what happened with the contract?

A Well, the contract—one thing that I asked Sylvia was to make sure it wasn't, you know, being condemned and she made sure and found out the opposite. It was being condemned. So that killed the contract.

There is no evidence the sale was not completed because Sylvia Prata had a defective title to the property, or her title insurance policy was not as represented to her or that she could not deliver clear title to the property. The only reason the sale fell through was because a condemnation suit had been filed, a matter totally unrelated to any representations or misrepresentations made by the Title Company at the time of the closing of the sale by the Bank to Sylvia Prata.

 In order to recover damages for any deceptive acts under Tex.Ins.Code Ann. art. 21.21 (Vernon 1981), it was necessary to prove that the conduct inquired about in question number one was a producing cause of any damages sustained by Sylvia Prata. *Weitzel v. Barnes,* 691 S.W.2d 598 (Tex.1985); *Chambless v. Barry Robinson Farm Supply, Inc.* 667 S.W.2d 598 (Tex.App.—Dallas 1984, writ ref'd n.r.e.). A producing cause is "an efficient, exciting or contributing cause, . . . ." *Rourke v. Garza,* 530 S.W.2d 794 (Tex.1975); *Dubow v. Dragon,* 746 S.W.2d 857 (Tex.App.—Dallas 1988, no writ). Neither reliance nor forseeability are necessary elements of recovery. *Weitzel v. Barnes; Hycel, Inc. v. Wittstruck,* 690 S.W.2d 914 (Tex.App.—Waco 1985, writ dism'd). But, the proof must establish that the damages alleged were factually caused by the defendant's conduct. *Dubow v. Dragon; Rotello v. Ring Around Products, Inc.,* 614 S.W.2d 455 (Tex.Civ.App.—Houston [14th Dist.] 1981, writ ref'd n.r.e.). Where the evidence does not establish that the alleged false, misleading or deceptive act or practice was a producing cause of

the plaintiff's actual damages, there is no cause of action. *MacDonald v. Texaco, Inc.,* 713 S.W.2d 203 (Tex.App.—Corpus Christi 1986, no writ).

In passing on a no evidence point, the reviewing court considers only that evidence and reasonable inferences therefrom viewed in its most favorable light and rejects all evidence and reasonable inferences to the contrary. *Glover v. Texas General Indemnity Company,* 619 S.W.2d 400 (Tex.1981). We have found no evidence which suggests that the lost sale resulted from anything other than the condemnation suit. That conclusion is supported by the acknowledgment in Appellee's brief which, when analyzing the testimony of Mr. William Abraham, says "[h]e testified the reason he did not proceed further with the contract was that a pending condemnation came up." The loss of the proposed sale was not factually caused by any conduct of the Title Company and there is no evidence to support the jury finding of producing cause of any damages.

In passing on the insufficient evidence point, we consider all of the evidence, including that which is contrary to the verdict. *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660 (1951). In this case, there is no testimony from either of the parties to the proposed sale that the sale was not completed because Sylvia Prata did not have a good, merchantable title to the house in question. All of the evidence is that the sale could not be completed because the Community College had pending a condemnation suit. That controlling evidence which we consider on this point has been set out verbatim. We sustain the insufficient evidence argument also. Point of Error No. Three is sustained.

 Since this point is directed only to the overruling of a motion for new trial, may we reverse and render when we sustain a no evidence contention? Under the holding in *J. Weingarten, Inc. v. Razey,* 426 S.W.2d 538 (Tex.1968), we could not. In *Bluebonnet Express, Inc. v. Employers Insurance of Wausau,* 651 S.W.2d 345 (Tex.App.—Houston [14th Dist.] 1983, no writ), the Court, on motion for rehearing,

655 S.W.2d 327 (1983), with one judge dissenting, concluded that the holding in *Razey* was no longer applicable. That case was tried to the court without a jury. More recently, in *City of Garland v. Vasquez*, 734 S.W.2d 92 (Tex.App.—Dallas 1987, writ ref'd n.r.e.), the Court concluded that where a no evidence point is first raised by assignment in a motion for new trial, the assignment is sufficient to obtain a remand for a new trial, but is not sufficient to obtain a rendition of judgment. That case was tried to a jury. *See also Commercial Insurance Company of Newark, New Jersey v. Puente*, 535 S.W.2d 948 (Tex.Civ.App.—Corpus Christi 1976, writ ref'd n.r.e.). We conclude, as did Justice Calvert, when he wrote on this issue nearly thirty years ago and said:

> The controlling consideration with an appellate court in passing on a point of error directed at the state of the evidence is not whether the point uses the preferable, or even the proper, terminology, but is whether the point is based upon and related to a particular procedural step in the trial and appellate process and is a proper predicate for the relief sought.

Robert W. Calvert, "No Evidence" and "Insufficient Evidence" Points of Error, 38 Texas L.Rev. 361 at 361–62 (1960). *See also* Robert W. Calvert, How an Errorless Judgment Can Become Erroneous, 20 St. Mary's L.J. 229 (1989). Having raised the sufficiency issue in only a motion for new trial and having raised a point of error complaining of the trial court's action on the motion for new trial, we can only grant a new trial when we sustain that particular point of error.[1]

█ In a motion for judgment non obstante veredicto, the Bank asserted that it was entitled to judgment because there was no evidence that it had engaged in any false, misleading or deceptive act and it had not violated the Deceptive Trade Practices Act. The controlling issue revolves around the testimony of Sylvia Prata that the Bank's attorney represented to her that following the foreclosure sale, the Bank would transfer to her clear title to the property in question. She testified he told her "the reason he was doing it this way was to guarantee us we would have clear title to whatever we were purchasing." She also said "after Coronado Bank already owned the property that was going to get free and clear title."

█ The Bank in fact transferred the property by a special warranty deed. There has been no breach of warranty and it was undisputed at the time of oral argument that Sylvia Prata owned fee title to the property in question. Accepting Sylvia Prata's testimony as true, we find no misrepresentation as to what she said she was told. The terms "good title" and "clear title" are synonymous, and mean that the land should be free from litigation, palatable defects and grave doubts and should consist of both legal and equitable title. *Veselka v. Forres*, 283 S.W. 303 (Tex.Civ. App.—Austin 1926, no writ). Likewise, merchantable, marketable title means a title free and clear from reasonable doubt as to matters of law and fact and is one not clouded by any outstanding contract, cove-

---

1. A somewhat related problem arises from any current application of the holding in *Aero Energy, Inc. v. Circle C Drilling Company*, 699 S.W.2d 821 (Tex.1985), that a no evidence point must be raised through one of five procedural steps, the last one of the five being a motion for new trial. We assume that case was tried under the 1978 language in Rule 324 which required a motion for new trial in order to present a complaint which had not otherwise been ruled upon. *See Litton Industrial Products, Inc. v. Gammage*, 668 S.W.2d 319 (Tex.1984). The court restated its holding in *Steves Sash & Door Company, Inc. v. Ceco Corporation*, 751 S.W.2d 473 (Tex.1988), in a case apparently tried several months after the April 1, 1984 amendment to Rule 324 which deleted the language about presenting a complaint which had not otherwise been ruled upon. We find nothing in Rule 324 which requires a complaint about "no evidence" in a motion for new trial as a prerequisite to a complaint on appeal. We are unable to determine if *Security Savings Association v. Clifton*, 755 S.W.2d 925 (Tex.App.—Dallas 1988, no writ) and *Tribble & Stephens Co. v. Consolidated Services, Inc.*, 744 S.W.2d 945 (Tex.App.—San Antonio 1987, writ denied), were tried before or after April 1, 1984. If Tex.R.App.P. 52(a) is the basis for such requirement, and no court has said so, does that rule conflict with Tex.R.Civ.P. 324(a)?

nant, interest, lien or mortgage sufficient to form a basis of litigation. *Lieb v. Roman Development Company*, 716 S.W.2d 653 (Tex.App.—Corpus Christi 1986, writ ref'd n.r.e.). In this connection, it should be noted that condemnation does not involve the question of title to land. *Thompson v. Janes*, 245 S.W.2d 718 (Tex.Civ.App.—Austin), *aff'd*, 151 Tex. 495, 251 S.W.2d 953 (Tex.1952); 32 Tex.Jur.3d, Eminent Domain, sec. 177.

In *Lansburgh v. Market St. Ry. Co.*, 98 Cal.App.2d 426, 220 P.2d 423 (1950), 21 A.L.R.2d 785, the Court considered an issue involving a proposed condemnation and an agreement to sell land in San Francisco. In that case, there was a recision after the purchaser learned of the proposed condemnation, but prior to the proceedings actually being commenced. Suit was filed to recover a deposit paid on the contract to purchase. Recovery was denied. The Court noted that at the time for performance, no right existed because of the contemplated future condemnation. It noted the condemning authority had no more than the same inchoate right of eminent domain which they had in all other properties within their boundaries, "a right which clearly is not an encumbrance or defect of title." The Court went on to note that in California, the first step with regard to condemnation "is the issuance of summons,...." A similar rule applies in Texas. In Rayburn on Condemnation, sec. 13.-08 (1989), the author states:

> It is now settled law in Texas, that until the statutory provisions as to service and return of notice have been complied with, that there is no jurisdiction that can be exercised over the land, or real estate in question,....

This is the clear holding in *City of Houston v. Kunze*, 153 Tex. 42, 262 S.W.2d 947 (1953); *Parker v. Ft. Worth & D.C. Ry. Co.*, 84 Tex. 333, 19 S.W. 518 (1892); *Rotello v. Brazos County Water Control & Improvement District*, 574 S.W.2d 208 (Tex.Civ.App.—Houston [1st Dist.] 1978, no writ). In the latter case, Chief Justice Coleman noted that condemnation proceedings must be conducted in strict compliance with the statute authorizing the procedure.

The Court concluded that where the condemnation proceedings which are pending in the county court are void for want of power or jurisdiction, such proceedings may be enjoined. *See also* 32 Tex.Jur.3d, Eminent Domain, sec. 216. We can only conclude that where the proceedings are void and the court has no jurisdiction, the petition for condemnation could just as well have been posted on the public square or the back of a cow barn for all the effect it would have. The Bank, having delivered to Sylvia Prata good, clear title to the land in question, was not guilty of any false, misleading or deceptive practice and did not violate the Deceptive Trade Practices Act. If the filing of a condemnation proceeding without proper notice to Sylvia Prata resulted in a loss of sale, the resulting damages arose from the conduct of the Community College and not the Bank. Points of Error Nos. Four and Five are sustained.

That part of the judgment of the trial court awarding damages against First American Title Company of El Paso is reversed and the cause remanded for a new trial and that part of the judgment awarding damages against Coronado State Bank is reversed and rendered that plaintiff have and recover nothing from the Bank, and the suit as against the two defendants is severed.