**CRAWFORD & COMPANY and Insurance Company of the State of Pennsylvania, Appellants,**

v.

**Ramona F. GARCIA, Appellee.**

**No. 08–90–00237–CV.**

Court of Appeals of Texas, El Paso.

July 31, 1991.

Opinion on Motion for Rehearing Oct. 2, 1991.

Jack Brewster, Brewster and Mayhall, El Paso, John Mitchell Nevins, Baker, Glast & Middleton, P.C., Dallas, Paul W. Dudley, Dudley, Dudley, Windle, El Paso, James T. Ferrini, Clausen, Miller, Gorman, Caffrey & Witous P.C., Chicago, Ill., for appellants.

Evelina Ortega, Caballero, Panetta & Ortega, El Paso, Paul E. Knisely, Spivey, Grigg, Kelly & Knisely, Austin, for appellee.

Before OSBORN, C.J., and FULLER and KOEHLER, JJ.

## OPINION

OSBORN, Chief Justice.

This appeal is from a judgment awarding damages to an employee, who while she had two worker's compensation claims pending, was fired from her employment. The judgment is against the worker's compensation carrier for the employer and the claims adjusting firm which handles claims for that carrier. We reverse and render.

Ramona Garcia worked for Mountain Pass Canning Company for twenty-seven years. She was initially employed as a seasonal worker, working primarily when chilies and tomatoes were harvested. After ten years, she became a full-time employee and worked packing tamales in cans. In 1978, she was moved to another department where she operated a machine to make taco shells. She was a good, hard-working employee.

On August 6, 1984, Mrs. Garcia injured her lower back while carrying a loaded tray of taco shells. At the request of Crawford & Company, she was sent to Dr. Grass, an El Paso orthopedic surgeon. When her pain persisted, she went to see Dr. Hazarian, also an orthopedic surgeon. He released her to return to work on October 1, 1984. On December 14, 1984, Mrs. Garcia slipped on some ice on a sidewalk at the plant where she worked and hurt her shoulder and neck. She reported the fall but continued to work until the time of her scheduled vacation on December 24. She returned to work on January 14, 1985. As a result of continuing problems with her neck and shoulder, she went to Dr. Hazarian on January 16. He cleared her to continue to work but prescribed daily physical therapy for ten days with a follow-up visit scheduled for January 31.

On January 24, 1985, Mrs. Garcia felt worse and went back to see Dr. Hazarian but he was out-of-town. She then called the company nurse for Mountain Pass, Carmen Fleming, to advise her that she was unable to report to work and would not be able to see her doctor until the next week. Fleming placed the telephone call on hold and called Gene Brewer at Crawford & Company. Her memorandum of the event reflected that Mr. Brewer suggested to Fleming that she tell Mrs. Garcia to go see Dr. Grass to see if she was disabled from reporting for work. That recommendation was then relayed to Mrs. Garcia. She told Fleming she preferred to see her own physician but Fleming insisted that she go see Dr. Grass as the insurance had suggested. After her physical therapy session in the morning, Mrs. Garcia saw Dr. Grass in the afternoon. Following an examination, Dr. Grass released her to return to work. She did not go back to work. Instead she continued with her physical therapy each day and again saw Dr. Hazarian as scheduled on January 31. He released her to return to work on Monday, February 4, 1985.

Following her last visit to Dr. Hazarian, Mrs. Garcia called her employer to report when she would be back to work. She was told she had been fired. Her employment was terminated on February 1, 1985. At that time, Mountain Pass had a company policy with its employees and their union that an employee who was absent for three consecutive days within any twelve consecutive months, without a satisfactory excuse, was subject to discharge.

Mrs. Garcia filed a suit for wrongful discharge against Mountain Pass, Insurance Company of the State of Pennsylvania and Crawford & Company and that suit resulted in a payment to her of $275,000.00 in settlement of her claim against Mountain Pass. The first trial of this case resulted in a verdict for the two remaining defendants. After the granting of a new trial based upon jury misconduct, the second trial resulted in a verdict for the plaintiff. In the second trial, the jury found (1) that Crawford & Company and Insurance Company of the State of Pennsylvania did commit unfair and deceptive acts or practices in the business of insurance; (2) that such conduct or failure on the part of the defendants was a producing cause of damage to plaintiff; (3) that the percentage of the occurrence caused by the parties was Crawford & Company 80 percent, Insurance Company of the State of Pennsylvania 10 percent and Mountain Pass 10 percent; and (4) damages for the occurrences in question for loss of wages $80,000.00, loss of wages in the future $260,000.00, mental anguish in the past $300,000.00 and mental anguish in the future $1,500,000.00. Based upon those findings, judgment was entered awarding Mrs. Garcia actual damages of $2,140,000.00 and that amount doubled for additional damages of $4,280,000.00, plus prejudgment interest of $213,678.78, less a credit of $214,000.00, plus costs and interest.

Crawford & Company in its first point of error and Insurance Company of the State of Pennsylvania in its third point of error contend the trial court erred in entering judgment for the Appellee because there is no evidence that their conduct was a producing cause of the termination of employment of Mrs. Garcia and any damages resulting therefrom. They argue that there is no evidence to support the submission of Question No. Two to the jury and no evi-

dence to support the answer which is a basis for the court's judgment.

Mr. Oscar Chapa, personnel director at Mountain Pass at the time Mrs. Garcia was fired in 1985, testified as a witness for the plaintiff. He said:

Q She was terminated, Mr. Chapa, because she did not go back to work, wasn't she?

A She failed to report to work and without proper authorization from the company for three consecutive days.

That's one of the plant agreements or the labor agreements that says that any person that does that is assumed to have quit the job, if you will.

 . . . . .

Q And if he (Mr. Huss) indicated that the reason that she was terminated was because she failed to return to work; is that correct, sir?

A Yes. She failed to report for work, yes.

He also identified the booklet given to employees which contains the agreement between Mountain Pass and the United Food and Commercial Workers International Union and states: "Employees who are absent for three days within any 12 consecutive months, without a satisfactory excuse, are subject to discharge."

He told the jury that Mountain Pass knew that Dr. Hazarian had released her to return to work on January 17 and "they were acting on her own doctor's release rather than Grass and when they attempted to get her to see another doctor, it was to see if this other doctor would actually disable her and come back and say Mrs. Garcia is so hurt from her therapy, or she's got the flu or whatever and I don't believe she can come to work."

He also testified as follows:

Q Okay. Is it true, Mr. Chapa, that as far as you are concerned and as far as you understand what went on, that Mountain Pass terminated the employment of Mrs. Garcia not because she refused or was upset about going to Dr. Grass, but because she didn't re-

port in every day like she was supposed to until she went back to work?

A That was my understanding, sir.

Q All right. You know it's in evidence that Mrs. Garcia has testified that the first time that she called Mountain Pass Canning Company after going to Dr. Grass on the 24th of January, 1985, was January 31st, 1985, so you got roughly a week there? Seven days?

A Yes, more or less.

Q And if, as she admitted, that she had not called in, would that be a violation of the rules as you understand it?

A Yes. As I understand it, it would be.

He also pointed out that the notice of termination gave as the reason "failed to report to work as scheduled on three consecutive work days without notifying the company (violation of Article VIII Item 3)." He said management had a right to verify her condition under the labor agreement and she was sent to Dr. Grass to have a doctor determine if she could work or not. Mr. Chapa also said that neither Mountain Pass nor Crawford & Company nor Insurance Company of the State of Pennsylvania did anything to interfere with her right to see or be treated by Dr. Hazarian. He also said that Crawford & Company and Insurance Company of the State of Pennsylvania did not fire Mrs. Garcia and did not recommend that she be fired.

 In order to recover damages for any deceptive acts or practices, it was necessary to prove that the conduct inquired about was a producing cause of any damages sustained by Mrs. Garcia. *Weitzel v. Barnes,* 691 S.W.2d 598 (Tex.1985). A producing cause is an "efficient, exciting or contributing cause,...." *Rourke v. Garza,* 530 S.W.2d 794, 801 (Tex.1975). Neither reliance nor foreseeability are necessary elements of recovery. *Weitzel v. Barnes; Dubow v. Dragon,* 746 S.W.2d 857 (Tex.App.—Dallas 1988, no writ); *Hycel, Inc. v. Wittstruck,* 690 S.W.2d 914 (Tex. App.—Waco 1985, writ dism'd). But, the proof must establish that the damages were factually caused by the defendant's conduct. *Dubow v. Dragon; Rotello v.*

*Ring Around Products, Inc.*, 614 S.W.2d 455 (Tex.Civ.App.—Houston [14th Dist.] 1981, writ ref'd n.r.e.). Where the evidence does not establish that the alleged false, misleading or deceptive act or practice was a producing cause of the plaintiff's actual damages, there is no cause of action. *MacDonald v. Texaco, Inc.*, 713 S.W.2d 203 (Tex.App.—Corpus Christi 1986, no writ).

All of the parties cite our holding in *First American Title Company of El Paso v. Prata*, 783 S.W.2d 697 (Tex.App.—El Paso 1989, writ denied). In that case, a property owner was unable to sell a house because of a condemnation statement filed by the El Paso Community College. She sought to recover damages from the bank which had sold her the property and the title company which insured the title to the property. This Court held that as a matter of law, the lost sale resulted from the action of the Community College, that her title was not defective and the conduct of the two defendants was not a producing cause of her damages.

■ Likewise, in the case at bar, the plaintiff was fired by her employer, Mountain Pass, for failure to comply with company and union work rules. These defendants did not fire her, did not recommend to her employer that she be fired and had no authority with regard to the decision made by her employer. She sued her employer, settled her cause of action for any wrongful conduct on its part and then pursued this suit against two parties who as a matter of law did not factually cause the termination of her employment relationship with Mountain Pass or any damages flowing therefrom. There is no evidence that any conduct upon the part of these two Appellants was a producing cause of any damages sustained by Mrs. Garcia. Just as in the *Prata* case, it is the testimony from the plaintiff's own witness which established the critical proof on this issue. We sustain Crawford & Company's Point of Error No. One and Insurance Company of the State of Pennsylvania's Point of Error No. Three.

■ We next consider the issue of whether the conduct of these Appellants constituted unfair and deceptive acts or practices. The basic contention of the Appellee is that she had an absolute right to choose a doctor of her choice to examine and treat her and that the recommendation by Mr. Brewer to her employer as to her examination by another doctor violated that right and was an unfair and deceptive act. It was alleged that "[t]he conduct of both Defendants as alleged herein, in violating Art. 8306, § 7, and Art. 8307(c), constitutes an unfair insurance practice in violation of Article 21.21 of the Texas Insurance Code, §§ 3 and 16, and Official Order 41060, § 1.003(b), Texas State Board of Insurance."

Tex.Ins.Code Ann. art. 21.21, § 3 (Vernon 1981) provides:

No person shall engage in this state in any trade practice which is defined in this Act as, or determined pursuant to this Act to be, an unfair method of competition or an unfair or deceptive act or practice in the business of insurance.

The State Board of Insurance Official Order No. 41060, dated June 4, 1982 provides in Section 1.003(b) as follows:

Irrespective of the fact that the improper trade practice is not defined in any other section of these Rules and Regulations, no person shall engage in this State in any trade practice which is determined pursuant by law to be an unfair method of competition or an unfair or deceptive act or practice in the business of insurance.

Without doubt, the Worker's Compensation Act provided that an employee had the sole right to select or choose the doctor of their choice for medical aid. Tex.Rev.Civ. Stat.Ann. art. 8306, § 7 (Vernon Supp. 1991). There is no proof that these Appellants in any way interfered with the exercise of that right by Mrs. Garcia. She selected Dr. Hazarian as her doctor. She saw him prior to her absences from work. He authorized her to return to work. She had an appointment with him on January 31. She kept that appointment. Her counsel acknowledged during oral argument that there was not a single instance when Mrs. Garcia wanted to see Dr. Hazarian

that she did not do so, except on the occasion when he was out of his office for a couple of days during the last week of January. The fact that Mrs. Garcia was sent to Dr. Grass by her employer does not establish that either of these Appellants interfered with her right to be treated by a doctor of her choice. The purpose for her seeing Dr. Grass on January 24 was to determine if there was a medical basis for changing the prior evaluation by her own physician that she could continue to work while taking physical therapy. She did not go to Dr. Grass for surgery or treatment or for medication to treat a compensable injury. It seems important to recall that it was Mrs. Garcia's call to her employer about being unable to return to work that initiated the appointment with Dr. Grass and not a call to Crawford & Company about compensation benefits. Mrs. Garcia said I cannot come to work. The company said we want a doctor's certification that you cannot work. That did not interfere with her next scheduled appointment by the doctor of her choice.

There is no contention in this case that Crawford & Company or Insurance Company of the State of Pennsylvania violated any duty of good faith and fair dealing in effectuating a prompt, fair and equitable settlement of the worker's compensation claims. The holdings in *Vail v. Texas Farm Bureau Mutual Insurance Company*, 754 S.W.2d 129 (Tex.1988) and *Allied General Agency, Inc. v. Moody*, 788 S.W.2d 601 (Tex.App.—Dallas 1990, writ denied) are not applicable. Likewise, *Chitsey v. National Lloyds Insurance Company*, 738 S.W.2d 641 (Tex.1987) involved a settlement of a claim. In that case, the appellant did rely upon State Board of Insurance Order No. 41060 and the opinion quotes Section 1.003(b), but the Court concluded there was no proof to permit recovery of treble damages under Tex.Ins.Code Ann. art. 21.21. We sustain Crawford & Company's Points of Error Nos. Three, Four and Five and Insurance Company of the State of Pennsylvania's Points of Error Nos. One and Two.

In the *Chitsey* case, Justice Gonzalez said "[a] jury's role is to decide matters of fact and not matters of law." As part of the charge to the jury, the trial judge quoted verbatim three sections of Regulations of the Texas Insurance Board, one section of the Texas Worker's Compensation Statutes and one rule of the Industrial Accident Board. While the jury is to receive the law from the court, it is not a recognized procedure for the court to give statutes and rules to a jury for their own interpretation. That is the duty of the court. When submitting Question No. One to the jury, the court gave no definition of "unfair or deceptive acts or practices." They were left to make their own interpretation based upon two pages of rules, regulations and statutes. The issue suffered from the same basic defect noted by the Court in *Spencer v. Eagle Star Insurance Company of America*, 780 S.W.2d 837 (Tex.App.—Austin 1989, writ pending). We sustain Crawford & Company's Points of Error Nos. Eight and Nine and Insurance Company of the State of Pennsylvania's Point of Error No. Five.

The judgment of the trial court is reversed and judgment rendered for Crawford & Company and Insurance Company of the State of Pennsylvania.

Before OSBORN, C.J., and FULLER and KOEHLER, JJ.

## OPINION ON MOTION FOR REHEARING

OSBORN, Chief Justice.

The Appellee asserts in her Motion for Rehearing that "this Court has disregarded the well-established standard of review for 'no-evidence' points of error, and has improperly substituted its own view of the evidence and facts of record for that of the jury." It is argued that "the Court's opinion relies almost exclusively on portions of the testimony of Mr. Oscar Chapa, ...."

The Court does not rely upon the testimony of Mr. Chapa. He was a witness called by the Appellee and she relied upon his testimony to establish why she lost her job. The Court did cite short quotes from his testimony to show that such evidence does not even constitute "some evidence" that the conduct of these Appellants was

the reason Mrs. Garcia was fired from her job at Mountain Pass. Without some evidence, there was no fact issue for the jury. It is argued that this witness was impeached and that it was for the jury to pass on his credibility. That is true. But, the jurors could not find just the opposite of what he said even if they disbelieved him. *Texas & N.O.R. Co. v. Grace*, 144 Tex. 71, 188 S.W.2d 378 (1945); *Mercury v. Mustachia*, 540 S.W.2d 339 (Tex.Civ.App.—Corpus Christi 1976, no writ).

Appellee continues to argue that these Appellants were responsible for Mrs. Garcia being required to see Grass and that interfered with her right to see her own doctor. Counsel admitted in oral argument that there was not a single instance when Mrs. Garcia wanted to see Dr. Hazarian that she did not do so, except when he was out of his office. There was no interference with that relationship by these Appellants.

The Motion cites testimony from Mr. Chapa on the issue of whether Mrs. Garcia was required to report the reason for her failure to report to work on only one occasion or whether she had to report each day. That evidence all goes to the issue of whether Mountain Pass wrongfully discharged Mrs. Garcia. That issue was settled with the employer and is not related to the issues in this case.

The Motion for Rehearing is overruled.