IN THE

TENTH COURT OF APPEALS

 




 
 
 
 
 
 
 


 

 



No. 10-08-00105-CR

 

In re
Calvin Vernon

 

 



Original Proceeding

 



MEMORANDUM  Opinion










 

            Petitioner seeks by mandamus an out of
time appeal of a criminal conviction.  He asserts that he did not sign the
“Motion to Dismiss” his appeal which resulted in his direct appeal being
dismissed.  See Vernon v. State, No. 10-91-145-CR (Tex. App.—Waco Sept. 11, 1991, no pet.) (not designated for publication).  By letter, the
Clerk of this Court provided notice to Vernon that his petition may be
dismissed for want of jurisdiction.  In response, Vernon presented a motion
requesting that the petition be changed to a Writ of Error and forwarded to the
Texas Supreme Court.  We deny his request.

            We do not have jurisdiction to grant
an out of time appeal.  Parr v. State, 206 S.W.3d 143, 145 (Tex.
App.—Waco 2006, no pet.); see Wallace v. State, No. 10-07-00041-CR, 2007 Tex. App. LEXIS 3203 (Tex. App.—April 25, 2007, no pet.).  Accordingly, the
Petition for Writ of Mandamus is dismissed.[1]

 

 

                                                                        TOM
GRAY

                                                                        Chief
Justice

 

Before
Chief Justice Gray,

            Justice
Vance, and

            Justice
Reyna

Petition
dismissed

Opinion
delivered and filed May 7, 2008

Do
not publish

[OT06]









[1] Vernon asserts that the line for his signature in the motion to dismiss his appeal was left
blank.  We have reviewed the record from the appeal of the underlying criminal
conviction.  The motion to dismiss was personally signed by Vernon.  A true,
correct, and complete copy is attached to this memorandum opinion.








ted the summary judgment. We will reverse
and remand.
      Marla Repka, who was pregnant when she was injured in an auto accident on February 3,
1987, was admitted to Hermann Hospital at 7:00 p.m. that evening. At 9:00 p.m. she gave birth
to her daughter, Michelle, prematurely. Both she and the baby required hospitalization. On
February 4 Haverna Jackson, the hospital's employee, contacted Susan Baum at Blue Cross to
verify insurance coverage for Michelle.
      Blue Cross produced this transcript of Jackson's and Baum's February 4 phone call:
BAUM: Customer Service, Susan Baum, may I help you?
JACKSON: Yes, I need to verify insurance please.
. . . 
      BAUM:       Who are you with?
      JACKSON:  Hermann Hospital.
. . . 
      BAUM:       . . . Okay, and your patient's name?
      JACKSON:  Last name: R-E-P-K-A and [it's] a baby girl.
. . . 
      JACKSON:  The name of the insured person is Edlynn [McCarty, the baby's grandmother]
. . . I think she is the mother [of Marla Repka] and Marla I think is the daughter
[of Edlynn McCarty] and Marla had a baby.
      BAUM:       She's on the policy, the daughter Marla. Now what I do want to tell you that
the group, the paid to date on the premiums is 1/1/87 which means they were
paid up to the end of December so we haven't yet got January or February
premiums so when I tell you this, the benefits that I give you are not guaranteed
that they're going to pay at all. Everything is contingent on the contract
limitations[,] you know, and of course the medical necessity[.] [T]hat goes
without saying. But particularly because I don't know how this group pays their
premiums. I don't know if they consistently pay like a month or two months
behind. That may be normal for them to do and that would be fine, but I have
no way of knowing that.
      JACKSON:  Okay, I understand that[.] I think what I'm searching for more so is that if the
grandbaby [of the insured, Edlynn McCarty,] is going to be covered if
everything else is . . . 
      BAUM:       Yes, because this is within the [first] 30 days of life. She's got 30 days, the
mother, the insured[,] to get the infant added on to the policy. She's got til the
baby is 30 days old but prior to that the baby is covered. For the first 30 days
the baby is covered.
      JACKSON:  Okay, the baby is covered for the first 30 days. If they want to keep this baby
. . . 
      BAUM:       They got to [file] the application within that time period. Within that 30 days.
. . . 
      JACKSON:  I'm trying to find out because this baby is in our intensive care unit and [it's] no
telling how long she's going to be here, so [we're] trying to look ahead.
      BAUM:       So I think it's a good idea. Okay, the original effective date of this policy was
12/1/86. . . . Now we will pay 80% [of] average semi-private room, well this
doesn't apply. 80% of the miscellaneous including an ICN. Unlimited number
of days. Her out of pocket expense should not exceed $400. At that point it
will go into 100% of reasonable charge that we will pay. And this is a 1 million
dollar lifetime maximum contract.
(Emphasis added).
      Blue Cross later denied coverage on Repka and her baby, although the record does not reflect
the date of or reason for the denial. Hermann Hospital alleged in its petition that Blue Cross,
acting through Baum, misrepresented both Repka's and her daughter's insurance coverage and that
it relied on the misrepresentations to its detriment because it did not seek other sources for
payment of their bills or transfer them to a county medical facility.
      Article 21.21 of the Insurance Code, in section 16, provides that any person who engages in
an act or practice declared by section 4 of article 21.21 or by the rules or regulations adopted by
the Board of Insurance to be unfair methods of competition or unfair or deceptive acts or practices
in the business of insurance or engages in any deceptive trade practice defined by section 17.46
of the Deceptive Trade Practices Act (DTPA) can be sued for engaging in the practice. See id.;
Tex. Bus. & Comm. Code Ann. § 17.46(b) (Vernon Supp. 1993). The hospital asserted that the
defendants' conduct and practices violated article 21.21 because they constituted:
      •    false, misleading or deceptive acts in the business of insurance (section 17.46(a) of the
DTPA).
      •    representations that services had characteristics or benefits they did not have or that a
person had a status, affiliation or connection he did not have (section 17.46(b)(5) of the
DTPA).
      •    representations that services were of a particular standard, quality or grade when they
were not (section 17.46(b)(7) of the DTPA).
      •    representations that an agreement conferred or involved rights, remedies, and obligations
it did not have (section 17.46(b)(12) of the DTPA).
      •    an unconscionable action or course of action (section 17.45 of the DTPA).
      •    making, issuing, circulating, or causing to be made, issued or circulated, a
misrepresentation of the terms or benefits provided by an insurance policy (article 21.21
§ 4(1)).
      •    a refusal to pay a claim without making a reasonable investigation based on all available
information (Insurance Board Order NO. 41454, Rule 059.21.26.003(15)).
      •    a misrepresentation of the terms of a policy, engaging in unfair methods of competition
or practices in handling a claim (Insurance Board Order No. 41060, Rule
059.50.01.003(a), (b), and Insurance Board Order No. 18663, Rule 059.50.01.004).
      •    causing confusion or a misunderstanding of the sources, sponsorship, approval or
certification of goods or services (section 17.46(b)(2) of the DTPA).
      Blue Cross and Baum moved for a summary judgment on the grounds that two essential
elements of the hospital's cause of action—misrepresentation and reliance—were conclusively
established in the defendants' favor. See Rosas v. Buddies Food Store, 518 S.W.2d 534, 537
(Tex. 1975) (holding that the defendant is entitled to a summary judgment if the evidence
conclusively negates at least one essential element of the plaintiff's action). We will review the
summary judgment under the guidelines in Nixon v. Mr. Property Management, 690 S.W.2d 546,
548-49 (Tex. 1985). 
MISREPRESENTATION
      Blue Cross and Baum based their first ground—that the evidence conclusively established that
Baum's statements were not misleading or deceptive—on the February 4 phone call. Although the
transcript of the call is uncontroverted, its interpretation is not. The defendants argue that only
one conclusion can be drawn from the transcript of the phone call—i.e., that Baum did not
misrepresent the coverage of the policy and thus her statements were not misleading or deceptive. 
In particular, they rely on the italicized portion of the transcript as conclusive evidence that Baum
warned the hospital that no benefits might be paid under the policy because of the non-payment
of premiums. Hermann Hospital contends, however, that reasonable minds could differ over
whether Baum represented that the policy was in effect at the time of the phone call and that the
baby was covered under it at least for the first thirty days of life.
      We agree with the hospital that reasonable minds could differ over the interpretation of
Baum's statements relating to coverage. One could reasonably believe that the purpose of
Jackson's inquiry was to determine whether the baby was covered by insurance on February 4,
the very instant the phone call was made. This involved two critical inquiries: (1) whether a
policy was in effect at that time, and (2) whether the baby was then covered under the policy. If
the policy was in effect and the baby was covered, the hospital would be entitled to payment of
Repka's and the baby's hospital bills as long as the policy remained effective, either during a grace
period or thereafter, and the baby was covered. See First Bankers Insurance Company v. Newell,
463 S.W.2d 745, 746-47 (Tex. Civ. App.—Amarillo 1971), aff'd, 471 S.W.2d 795 (Tex. 1971)
(holding that any loss originating during a grace period in a hospitalization policy is covered
regardless of whether a late premium is paid). Thus, the time when a policy lapses for
nonpayment of premiums is a critical issue in establishing coverage. In any event, the summary-judgment evidence does not reflect the insurance contract or show when or why the policy
lapsed—if it did.
      Baum did not tell Jackson unequivocally that the grandmother's policy had already lapsed, but
left that question dangling with her statement that the late payment of premiums "may be normal
for [the grandmother's employer] and that would be fine, but I have no way of knowing that." 
(Emphasis added). Considering the phone call in its entirety, one could reasonably interpret
Baum's statements as representing that the policy was then in effect but might later lapse because
of the non-payment of premiums. Baum did, however, unequivocally represent that the baby
would be covered under the policy, if in effect, for at least the first thirty days of life, regardless
of whether she was added to the policy as an insured within that time, and would be covered
thereafter if timely added to the policy. Jackson could have reasonably interpreted Baum's
statements as representing that the policy was effective on February 4, that the baby and the
mother were then covered under the policy, and that the policy would remain in effect until later
terminated under its provisions. 
      An issue is conclusively established only when the evidence is such that ordinary minds cannot
differ over the conclusion to be drawn from it. Triton Oil & Gas Corp. v. Marine Contractors,
644 S.W.2d 443, 446 (Tex. 1982). Thus, a fact issue is presented when conflicting inferences
may be drawn from uncontroverted facts. Brown v. Prairie View A & M University, 630 S.W.2d
405, 412 (Tex. App.—Houston [14th Dist.] 1982, writ ref'd n.r.e.). Under this test, a material
fact existed over the interpretation of Baum's statements and whether they were misleading or
deceptive. These fact issues precluded a summary judgment. See Tex. R. Civ. P. 166a(c).
RELIANCE
      The second ground alleged for the summary judgment was that the evidence conclusively
established that Baum's representations, even if incorrect and misleading, were all made
subsequent to the admission of Repka and her daughter to the hospital, and thus there could have
been no reliance as a matter of law. Reliance is not a necessary element in a cause of action under
article 21.21. First American Title Co. Prata, 783 S.W.2d 697, 701 (Tex. App.—El Paso 1989,
writ denied). All that is required is proof that any deceptive act was a producing cause of the
plaintiff's damages. Id. Thus, the court erred when it granted the summary judgment on the
ground that the evidence conclusively negated reliance.
      We sustain the hospital's point of error, reverse the summary judgment, and remand the cause
for a trial.
 
                                                                                     BOB L. THOMAS
                                                                                     Chief Justice
Before Chief Justice Thomas, 
      Justice Cummings, and
      Justice Vance
Reversed and remanded
Opinion delivered and filed February 24, 1993
Do not publish