Opinion issued March 16, 2006











 

In The
Court of Appeals
For The
First District of Texas




NO. 01-02-00807-CV




TEXAS MUTUAL INSURANCE COMPANY F/K/A TEXAS WORKERS’
COMPENSATION INSURANCE FUND, Appellant

V.

RAY FERGUSON INTERESTS, INC., Appellee







On Appeal from the 240th District Court
 Fort Bend County, Texas
Trial Court Cause No. 103609




MEMORANDUM OPINION 

          Appellant, Texas Mutual Insurance Company (“the Fund”), appeals from a
judgment rendered on a jury verdict awarding appellee, Ray Ferguson Interests, Inc.
(“RFI”), $2,273,613 in actual damages, $3,500,000 as statutory damages for knowing
violation of the Insurance Code, $875,000 in trial and contingent appellate fees, and
pre-and post-judgment interest. We determine (1) whether the trial court erred in
denying pre-judgment interest to the Fund; (2) whether legally sufficient evidence
supported, or judicial immunity barred, the award of damages to RFI; and (3) whether
the Fund conclusively proved its attorney’s fees in an amount greater than that
awarded by the jury. We reverse the judgment in part, affirm it in part, and remand
the cause with instructions.
I. Background
          Ray Ferguson had been in the paving business since 1976. He incorporated
RFI Brazos Paving, Inc. (“Brazos”) in 1989. He incorporated RFI in 1991. Ray
Ferguson was the majority owner of RFI at all times pertinent to this suit. He (or a
“living trust” for which he was trustee) was also the majority owner of Brazos
through June of 1996, when he became a minority owner of Brazos. RFI generally
operated as a general contractor, subcontracting out the physical work to other
companies, including Brazos. Brazos operated as a subcontractor performing
concrete-paving work. Brazos performed the vast majority of its work for RFI.
          For five years, from 1993 to 1998, RFI carried workers’ compensation
insurance through the Fund for its employees. Brazos, on the other hand, was a non-subscriber under the Texas workers’ compensation system.
          In 1997, RFI was working as a subcontractor on a paving job for a general
contractor. RFI, in turn, subcontracted with Brazos for a crew of four of Brazos’s
men to perform the storm-sewer work for RFI’s paving project. Ray Ferguson
testified that, at some point during the construction work, the general contractor
learned that Brazos was a non-subscriber and instructed him that it wanted Brazos’s
storm-sewer crew to have workers’ compensation coverage. Ray Ferguson further
testified that, in order to comply with the general contractor’s requirement, he moved
the four Brazos employees to RFI’s payroll permanently. The employee transfer
happened in about the middle of 1997. 
          A few days after the employee transfer, one of the transferred employees, Larry
Garza, was injured and applied for workers’ compensation benefits. While
processing Garza’s claim, the Fund learned that Garza had been moved from Brazos
to RFI shortly before the incident. Around December 1997, the Fund’s premium-fraud department began looking into whether Brazos was truly an independent
subcontractor to RFI or whether RFI owed premiums that it had not paid for Brazos’s
employees because Brazos was not an independent subcontractor. The Fund disputed
the motive behind the moving of the Brazos employees to RFI’s payroll, alleging
instead that the employees were switched to RFI to obtain coverage without paying
sufficient premium. Alternatively, the Fund viewed the employee switch as evidence
that RFI controlled Brazos sufficiently for the latter not to be an independent
contractor.
          Sometime in or soon after December 1997, the Fund informed RFI that it
wanted to review Brazos’s books and to audit prior policy years as part of its
investigation. The Fund never actually conducted the audits of prior policy years,
looked at Brazos’s books, or billed for or collected the disputed additional premiums
before suit was filed. Rather, on February 26, 1998, RFI sued the Fund in Fort Bend
County, alleging that the Fund had improperly sought to re-audit RFI with the
intention of reassessing premiums for prior policy years. In its suit, RFI sought
declarations that the Fund had no contractual right to do these things and that RFI
owed no further premium for prior coverage years.
          The Fund counter-claimed against RFI and asserted third-party claims against
Ray and Pam Ferguson and Brazos for violations of RICO (mail fraud and
racketeering), civil conspiracy, breach of contract, fraud and misrepresentation,
negligent misrepresentation, and violations of Insurance Code articles 5.65B and
5.65C and sought actual damages, treble damages under RICO, and attorney’s fees.



          By the time of trial, RFI had amended its petition to allege causes of action for 
breach of contract, violations of former Insurance Code article 21.21,


 and breach of
the duty of good faith and fair dealing


 and to seek “economic, special and
consequential” damages, statutory damages for knowing violations of former article
21.21, exemplary damages, and attorney’s fees. Also by the time of trial, the Fund
had amended its counter-claims and third-party claims to allege causes of action for
breach of contract, fraud, civil conspiracy, and violations of Insurance Code article
5.65C(d) and to seek actual damages (additional premiums or, alternatively, out-of-pocket damages), attorney’s fees, and exemplary damages. The Fund also asserted
the affirmative defenses of statutory immunity


 and judicial immunity.
          The jury returned a verdict with the following findings:
Relating to RFI’s former article-21.21 claims:
●The Fund engaged in six specific unfair and deceptive acts or
practices.
 
●RFI suffered $3,670,000 in actual damages from the Fund’s unfair
and deceptive acts or practices.



 
●The Fund engaged knowingly in the six unfair and deceptive acts
or practices.
 
Relating to RFI’s contract-breach claims:
 
●The Fund did not fail to comply with the insurance policy
provisions relating to premiums or audits for the first three
coverage years, but the Fund failed to comply with these policy
provisions in the last two coverage years.
 
●RFI suffered $5,670,000 in actual damages from the Fund’s
failure to comply with the insurance policy provisions relating to
audits and premiums.



 
●The Fund waived its right “to conduct additional audits in 1998
(for the years 1993-1998) after conducting final audits at the end
of each respective policy period,” but only for the last two
coverage years; the Fund did not waive its right to conduct
additional audits for the first three policy years.
 
Relating to the Fund’s statutory immunity defense:
 
●The conduct for which the jury found the Fund liable was
conducted by the Fund in bad faith.
 
Relating to attorney’s fees:
 
●RFI was entitled to $750,000 in attorney’s fees for preparation
and work through trial, $75,000 in fees for an appeal to the court
of appeals, and $50,000 in fees for an appeal to the Texas
Supreme Court.
 
●The Fund was entitled to $165,551 in attorney’s fees for
preparation and work through trial, $55,184 in fees for an appeal
to the court of appeals, and no fees for an appeal to the Texas
Supreme Court.
 
Relating to the Fund’s fraud claims:
 
●Neither Ray Ferguson, RFI, Pam Ferguson, nor Brazos committed
fraud against the Fund.


 
●The Fund, its representatives, or its agents relied on the Fund’s
own investigation or audits in deciding whether to enter into
insurance contracts with RFI in the first and last policy years, but
not in the middle three policy years.
 
●The Fund, its agents, its employees, or its representatives
discovered or reasonably could have discovered that the Fund had
suffered an injury because of the Fergusons’, RFI’s, or Brazos’s
fraud in December 1997.
 
Relating to the Fund’s contract-breach claim:
 
●Brazos was not an independent contractor for the first three years
of coverage, but it was for the last two years of coverage.
 
●A written contract existed between RFI and Brazos that specified
that Brazos would assume the responsibilities of an employer for
performance of the work.
 
●The Fund’s damages were $551,836.



 
Relating to other matters:
 
●RFI was, in the normal course of its business operations, a
contractor preparing to construct, constructing, altering, repairing,
extending, or demolishing a commercial structure that does not
exceed three stories in height or 20,000 square feet or an
appurtenance to such a structure.
 
 
          RFI apparently elected to recover on the former article-21.21 claims, and the
trial court rendered judgment for RFI in the amount of $2,273,613 in actual damages;



$3,500,000 in statutory damages for knowingly committing Insurance Code
violations; pre-and post-judgment interest; $750,000 in attorney’s fees for trial, an
additional $75,000 in attorney’s fees in the event of an unsuccessful appeal to the
court of appeals by the Fund, and an additional $50,000 in attorney’s fees in the event
of an unsuccessful appeal to the Texas Supreme Court by the Fund. The trial court
denied the Fund’s request for a further offset in the amount of pre-judgment interest
on its contract-breach claim and rendered a take-nothing judgment on all of the
Fund’s claims. Both parties filed notices of appeal, but only the Fund asserts any
appellate challenges.
II. Pre-Judgment Interest
          In issue six, the Fund argues that the trial court erred in failing to award it pre-judgment interest—and to offset the amount of pre-judgment interest from RFI’s
judgment award—on its breach-of-contract claim. RFI confesses error. See Chilton
Ins. Co. v. Pate & Pate Enters., Inc., 930 S.W.2d 877, 894 (Tex. App.—San Antonio
1996, writ denied); see also Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.,
962 S.W.2d 507, 531 n.12 (Tex. 1998). 
          We sustain issue six.
III. Sufficiency Challenges to Damages
A.      The Fund’s Challenges
          In part of issues one and two, the Fund argues that the trial court erred in
rendering judgment for RFI on RFI’s contract-breach and former article-21.21 claims
because there was no evidence to support the damages that the jury found; no
evidence showed that the Fund’s actions for which the jury found the Fund liable
caused any of the damages that the jury found; and judicial and statutory immunity
protected the Fund from certain of RFI’s claims. Specifically, the Fund argues that
1.there is no evidence of “loss of value” damages (former article-21.21 claim) or of “lost equity” damages (contract-breach claim);
 
2.diminution of a business’s value is not an appropriate measure of
damages for contract breach;
 
3.with respect to both causes of action, there is no evidence of loss
of credit reputation;
 
4.statutory immunity protects the Fund from liability on either
cause of action;
 
5.damages for “lost time” due to litigation are not recoverable as a
matter of law for either cause of action;
 
6.judicial immunity protects the Fund from liability on either cause
of action; and
 
7.the acts and omissions that the jury found breached the policies’
terms and violated former article 21.21 could not, as a matter of
law, have caused (and, alternatively, there is no evidence that
they caused) RFI’s injuries because, among other things, RFI’s
claimed damages arose, if at all, from defamatory statements, and
RFI did not plead defamation or submit a jury question on this
claim.

          We conclude that we need to discuss only the Fund’s fifth, sixth, and seventh
challenge listed above: that, as a matter of law, (1) damages for “lost time” due to
litigation are not recoverable for either cause of action; (2) judicial immunity shielded
the Fund from liability arising from some of the actions alleged to have caused RFI’s
damages; and (3) the Fund’s acts and omissions found by the jury could not have
caused RFI’s injuries because those damages arose from defamatory statements and
defamation was neither pleaded nor submitted as a question to the jury. The Fund
preserved its fifth, sixth, and seventh challenges in a motion for directed verdict,
charge objections, and a motion for judgment notwithstanding the verdict (“JNOV”). 
It is thus the propriety of the trial court’s rulings on these motions and objections that
we review. 
 
B.      Standard of Review
          “A court may instruct a verdict if no evidence of probative force raises a fact
issue on the material questions in the suit.” Prudential Ins. Co. of Am. v. Fin. Review
Servs., Inc., 29 S.W.3d 74, 77 (Tex. 2000). “A directed verdict for a defendant may
be proper in two situations. First, . . . when a plaintiff fails to present evidence
raising a fact issue essential to the plaintiff’s right of recovery. Second, . . . if the
plaintiff admits or the evidence conclusively establishes a defense to the plaintiff’s
cause of action.” Id. (citations omitted). “Directed verdicts have also been sustained
. . . where the substantive law did not as a matter of law permit a plaintiff to recover
on his pleaded cause of action.” McCall v. Tana Oil & Gas Corp., 82 S.W.3d 337,
343 (Tex. App.—Austin 2001), rev’d on other grounds, 104 S.W.3d 80 (Tex. 2003). 
A judgment notwithstanding the verdict is proper when a directed verdict would have
been proper. Tex. R. Civ. P. 301; Fort Bend County Drainage Dist. v. Sbrusch, 818
S.W.2d 392, 394 (Tex. 1991). 
          When made on an evidentiary basis, rulings on motions for directed verdict and
on motions for JNOV are reviewed under the same legal-sufficiency test as are
appellate no-evidence challenges. See City of Keller v. Wilson, 168 S.W.3d 802, 823,
827 (Tex. 2005). Accordingly, to determine whether there is some evidence to
support a jury’s finding and, thus, to determine whether a trial court correctly denied
a motion for JNOV or motion for directed verdict, “we must view the evidence in a
light that tends to support the finding of disputed fact and disregard all evidence and
inferences to the contrary.” Wal-Mart Stores, Inc. v. Miller, 102 S.W.3d 706, 709
(Tex. 2003). “The supreme court recently discussed the appropriate standard of
review for legal sufficiency challenges in City of Keller v. Wilson, 168 S.W.3d 802
(Tex. 2005).” Chubb Lloyd’s Ins. Co. of Tex. v. H.C.B. Mech., Inc., No. 01-04-00572-CV, 2005 WL 3315237, at *2 (Tex. App.—Houston [1st Dist.] Dec. 8, 2005,
no pet. h.). “The [Keller] court concluded that ‘[t]he final test for legal sufficiency
must always be whether the evidence at trial would enable reasonable and fair-minded
people to reach the verdict under review. . . . [L]egal-sufficiency review in the proper
light must credit favorable evidence if reasonable jurors could, and disregard contrary
evidence unless reasonable jurors could not.’” Id. (quoting City of Keller, 168
S.W.3d at 827).
          If more than a scintilla of evidence supports the jury’s finding, “the jury’s
verdict and not the trial court’s judgment must be upheld.” Miller, 102 S.W.3d at
709. More than a scintilla of evidence exists if the evidence “‘rises to a level that
would enable reasonable and fair-minded people to differ in their conclusions.’” 
Ford Motor Co. v. Ridgway, 135 S.W.3d 598, 601 (Tex. 2004) (quoting Merrell Dow
Pharm., Inc. v. Havner, 953 S.W.2d 706, 711 (Tex. 1997)). Conversely, evidence
that is “‘so weak as to do no more than create a mere surmise’” is no more than a
scintilla and, thus, no evidence. Id. (quoting Kindred v. Con/Chem., Inc., 650 S.W.2d
61, 63 (Tex. 1983)). The jury is the sole judge of witnesses’ credibility, and it may
choose to believe one witness over another; a reviewing court may not impose its own
opinion to the contrary. City of Keller, 168 S.W.3d at 819. Because it is the jury’s
province to resolve conflicting evidence, we must assume that jurors resolved all
conflicts in accordance with their verdict. Id. at 819-20. 
C.      Pertinent Jury Questions
          Following are the jury questions pertinent to causation and damages for RFI’s
former article-21.21 cause of action:
QUESTION NO. 1
 
Did the Fund engage in any unfair or deceptive act or practice that
caused damage to RFI?
 
“False, misleading, or deceptive act or practice” means an
act or series of acts that have the tendency to deceive an average
person, even though that person may have been ignorant,
unthinking or gullible.
 
“Unfair or deceptive act or practice” means any of the
following:
 
Answer:


 
 yes 1.Making or causing to be made any statement
misrepresenting the terms, benefits, or
advantages of an insurance policy;
 
 yes 2.Making or directly or indirectly causing to be
made, an assertion, representation or
statement with respect to insurance that was
untrue, deceptive or misleading; or
 
3.Making any misrepresentation relating to an
insurance policy by:
 
 yes a.making any untrue statement of a
material fact; or
 
 yes b.failing to state a material fact that is
necessary to make other statements not
misleading, considering the
circumstances under which the
statements are made; or
 
 yes c.making any statement in such a manner
as to mislead a reasonably prudent
person to a false conclusion of a
material fact; or 
 
 yes d.failing to disclose the terms of
coverage.
 
Answer “Yes” or “No” to each of the above elements.

 
QUESTION NO. 2
 
IF YOU ANSWERED ANY ELEMENT OF QUESTION NO. 1 “YES,”
THEN AND ONLY THEN ANSWER QUESTION NO. 2.
 
What sum of money, if any, if now paid in cash, would
fairly and reasonably compensate RFI for its damages, if any, that
resulted from such unfair or deceptive act or practice? Damages
may be recovered under this question only if they are proved to
be a natural, probable, and foreseeable consequence of the Fund’s
conduct.
 
In answering questions about damages, answer each
question separately. Do not increase or reduce the amount in one
answer because of your answer to any other question about
damages. Do not speculate about what any party’s ultimate
recovery may or may not be. Any recovery will be determined by
the court when it applies the law to your answers at the time of
judgment. Do not add any amount of interest on damages, if any.
 
Consider the following elements of damages, if any, and
none others.
 
Answer separately in dollars and cents, if any, for each of
the following:
 
1.Loss of value of RFI. $ 3.2 million 
 
2.The lost time spent by the officers and employees of RFI
attempting to remedy the problems arising from the Fund’s
actions. $ 70,000 
 
3.Damage to RFI’s credit reputation that was a consequence
of the Fund’s acts. $ 400,000 

          Following are the jury questions pertinent to causation and damages for RFI’s
contract cause of action:
 
 
QUESTION NO. 7
 
Did the Fund fail to comply with the insurance policy
provisions relating to premiums or audits between [the] Fund and
RFI?
 
You are instructed that under Texas law policies of
insurance and their construction are governed by the same rules
as other contracts. The terms used in them are to be given their
plain, ordinary and generally accepted meaning unless the
instrument itself shows them to have been used in a technical or
different sense.
 
You are instructed that under Texas law an insurance
company may not demand an insurance premium from an
employer for coverage of an independent contractor or an
employee of an independent contractor if the independent
contractor is under a contract of hire with the employer.
 
You are instructed that under Texas law an insurance
company may charge a premium for a subcontractor who is not an
independent subcontractor.
 
You are instructed that the Fund and RFI agreed to the
terms and conditions in the policies from 1993 to 1998 (the
expiration of the last policy was issued [sic] effective March,
1997 to March, 1998). RFI was the only named insured under the
policies.
 
Answer “YES” or “NO” for each policy.
 
ANSWER:
 
April 1993 to March 1994 No 
 
March 1994 to March 1995 No 
 
March 1995 to March 1996 No 
 
March 1996 to March 1997 Yes 
 
March 1997 to March 1998 Yes 
 
QUESTION NO. 8
 
IF YOU ANSWERED QUESTION NO. 7 “YES” FOR ANY POLICY,
THEN AND ONLY THEN ANSWER QUESTION NO. 8.
 
What sum of money, if any, if now paid in cash, would
fairly and reasonably compensate RFI for its damages, if any, that
resulted from the Fund’s failure to comply with the insurance
policies?
 
Damages may be recovered under this question only if they
are proved to be the natural, probable, and foreseeable
consequence of the Fund’s conduct.
 
In answering questions about damages, answer each
question separately. Do not increase or reduce the amount in one
answer because of your answer to any other question about
damages. Do not speculate about what any party’s ultimate
recovery may or may not be. Any recovery will be determined by
the court when it applies the law to your answers at the time of
judgment. Do not add any amount of interest on damages, if any.
 
Consider the following elements of damages, if any, and
none other.
 
Answer separately in dollars and cents, if any, for each of
the following:
 
1.RFI’s lost equity. $ 3.2 million 

 
2.The lost time spent by the officers and employees of RFI
attempting to remedy the problems arising from the Fund’s
actions. $ 70,000 
 
3.Damage to RFI’s credit reputation that was a consequence
of the Fund’s acts. $ 2.4 million 
 
D.      RFI’s Liability Theories at Trial
          As can be seen from RFI’s petition, RFI’s questioning of witnesses, the
witnesses’ testimony, RFI’s closing argument, and RFI’s appellee’s brief, RFI’s
liability theories under both causes of action were that the Fund
●never explained (to RFI or to its insurance agents) what criteria
it would use to determine whether Brazos was truly an
independent contractor;
 
●tried to collect premiums for employees of an independent
contractor (Brazos) in contravention of the law, in violation of the
policies’ terms, and when the Fund knew or should have known
(by having conducted more thorough audits or by having read
more thoroughly the audits that they had already conducted) that
RFI used subcontractors in general, that Brazos was one of those
subcontractors, and that Brazos was a truly independent
subcontractor;
 
●did not explain to RFI or its insurance agents that more than one
audit could be conducted for any policy year (in contravention of
the policies’ terms, although allowed by undisclosed internal
operating procedures); and
 
●tried to re-audit RFI, allegedly contrary to the policies’ terms, for
years in which a final audit had already been completed.


E.      Discussion
          1.       Damages for “Lost Time” Due to Litigation
          RFI presented evidence that it suffered $70,000 in damages due to time that
Ray and Pam Ferguson and other employees had lost “putting in a lot of hours
gathering documents and doing things” and “going and doing depositions, getting all
these documents ready,” meaning “close to a truckload” of documents produced “in
this case.” The jury awarded $70,000 for “[t]he lost time spent by the officers and
employees of RFI attempting to remedy the problems arising from the Fund’s
actions.”
          RFI’s evidence set out above can be summarized as financial loss due to time
spent by RFI’s employees on litigation matters (discovery, depositions, and the like). 
Such damages are generally not recoverable unless a statute or contract provides for
their recovery. See Eberts v. Businesspeople Pers. Servs., 620 S.W.2d 861, 863 (Tex.
App.—Dallas 1981, no writ). RFI does not claim that a statute or contract provides
for the recovery of these damages. Rather, RFI cites to Southland Lloyd’s Insurance
Co. v. Tomberlain in support. See 919 S.W.2d 822 (Tex. App.—Texarkana 1996,
writ denied). The Tomberlain court, however, did not depart from the general rule
noted above: rather, the court expressly stated that it would not reach the issue of
whether such damages could be recovered, and no other court has cited that case on
that point. See id. at 830 (“However, inasmuch as this case will be retried, we do not
express our approval of allowing recovery for the time and expense of a plaintiff lost
by virtue of participation in the trial proceedings.”). We thus hold that the only
evidence that RFI offered does not, as a matter of law, support the jury’s award of
$70,000 for “[t]he lost time spent by the officers and employees of RFI attempting to
remedy the problems arising from the Fund’s actions.”
          Accordingly, we sustain this challenge under issue one.
          2.       Claims Barred by Judicial Immunity or for Which Causation Was
Not Shown

          In further support of damages and causation, RFI presented evidence that, in
approximately the summer of 1998, the Fund began, either through its allegations in
the lawsuit or by separate letters to (or other unspecified contact with) RFI’s clients,
accusing RFI of being “frauds, cheats, and liars” and of having committed
racketeering, mail fraud, etc. Before the Fund’s above-referenced actions, RFI was
“one of the top five sought-after civil-type contractors in [the] Fort Bend–Harris
County area” and had a “real good reputation.” Additionally, the market was good
in 1998, 1999, and 2000 for paving business, and “[t]here was plenty of work for
everybody.”
 
          Beginning in 1998, however, Ray Ferguson became aware of a change in mood
of “just about all of” his customers in how they dealt with RFI. The clients stopped
working with RFI because of “fraud accusations and letters going out,” and, although
RFI’s customers “still wanted to do business with us,” they also “wanted this lawsuit
over before” they would do that. RFI’s taxable income and business value dropped
beginning in 1998; since then, RFI had not been able to turn a profit and had become
insolvent; RFI’s bonding capacity (or line) was reduced from $13,000,000 to zero;
RFI’s value was reduced from $3,200,000 in 1997 to no equity by the time of trial;
and RFI had had “very good credit” of about $400,000 before 1998, but no longer had
any credit or working capital afterwards. In sum, RFI presented evidence that it
would have been a successful business during that time period but for the Fund’s
above-referenced actions.
          On RFI’s former article-21.21 claim, the jury awarded $3,200,000 for the “loss
of value of RFI” and $400,000 for “damage to RFI’s credit reputation that was a
consequence of the Fund’s acts.” On RFI’s contract-breach claim, the jury awarded
$3,200,000 for “RFI’s lost equity” and $2,400,000 for “damage to RFI’s credit
reputation that was a consequence of the Fund’s acts.”
 
 
                    a.       Claims based on the Fund’s allegations and statements in the
lawsuit

          The jury’s award of damages cannot stand to the extent that that award was
based on damages, whether to RFI’s credit reputation or to its value or equity,
resulting from the Fund’s actions connected with the lawsuit. “Communications
made during the course of judicial proceedings are privileged. The privilege also
extends to pre-trial proceedings, including affidavits filed with the court.” Bird v.
W.C.W., 868 S.W.2d 767, 771 (Tex. 1994) (citations omitted). “This privilege
extends to any statement made by the judge, jurors, counsel, parties, or witnesses, and
attaches to all aspects of the proceedings, including statements made in open court,
pre-trial hearings, depositions, affidavits, and any of the pleadings or other papers in
the case.” Helfand v. Coane, 12 S.W.3d 152, 157 (Tex. App.—Houston [1st Dist.]
2000, pet. denied). The privilege extends even to perjured testimony. Laub v.
Pesikoff, 979 S.W.2d 686, 689 (Tex. App.—Houston [1st Dist.] 1998, pet. denied).
          As discussed below, although RFI did not plead defamation, its theory of
damages was that its clients, creditors, and bonding companies abandoned it, in part,
because of the Fund’s allegations and assertions—i.e., the Fund’s alleged defamatory
statements—made in the course of this judicial proceeding. “The [judicial] privilege
afforded against defamation actions is founded on the ‘theory that the good it
accomplishes in protecting the rights of the general public outweighs any wrong or
injury which may result to a particular individual.’” Bird, 868 S.W.2d at 771. The
judicial immunity that was recognized in Bird is not limited only to claims styled as
defamation claims, but instead extends to “claims arising out of communications
made in the course of judicial proceedings, regardless of the label placed on the
claim.” Crain v. Unauthorized Practice of Law Comm., 11 S.W.3d 328, 335 (Tex.
App.—Houston [1st Dist.] 1999, pet. denied). Accordingly, we hold that the jury’s
award of damages for “damage to RFI’s credit reputation” and for “loss of value” or
“equity” of RFI, awarded under either cause of action, to the extent that those
damages resulted from the Fund’s actions connected with the lawsuit, cannot be
sustained.
          We sustain this challenge under issue one.
                    b.       Damages resulting from the Fund’s communications with
RFI’s clients outside the context of litigation
          We further hold that no evidence supports the jury’s award of damages for
“damage to RFI’s credit reputation” and for “loss of value” or “equity” of RFI
because no evidence shows that the Fund’s actions for which the jury found it liable
caused the damages that RFI’s evidence proved.
 
          The jury charge required that damages, to be recoverable, be proved to be the
natural, probable, and foreseeable consequence of the Fund’s conduct. Under
common law, to recover damages for the Fund’s deceptive acts or practices under
former article 21.21, RFI had to prove that the Fund’s conduct was a producing cause
of any damages sustained. See Crawford & Co. v. Garcia, 817 S.W.2d 98, 101 (Tex.
App.—El Paso 1991, writ denied) (citations omitted). “A producing cause is an
‘efficient, exciting or contributing cause, . . . .’” Id. (quoting Rourke v. Garza, 530
S.W.2d 794, 801 (Tex. 1975)). Although neither reliance nor foreseeability are
necessary elements of recovery under the common law, the causation instruction
given in jury Question 2 (damages for the former article-21.21 claim) deviated from
the common law in that it required foreseeability. See id. Regardless, RFI’s proof
had to establish that the damages were factually caused by the Fund’s conduct. See
id. Also under the common law, to recover compensatory damages for the Fund’s
breach of contract, RFI had to establish that it suffered some pecuniary loss as a result
of the contract’s breach. See Prudential Secs., Inc. v. Haugland, 973 S.W.2d 394,
396-97 (Tex. App.—El Paso 1998, pet. denied). RFI’s evidence had to show that its
contract damages were the “natural, probable, and foreseeable consequence” of the
Fund’s conduct. See id.
 
          The evidence that RFI presented showed that RFI’s damages (other than those
caused by time lost participating in the lawsuit) were brought about by what RFI’s
evidence also showed were, in effect, independent torts: the Fund’s sending
communications to RFI’s customers, with the effect that those customers, RFI’s
creditors, and its bonding agents would not work with RFI, would not extend credit
to RFI, or would not bond RFI.


 These are classic defamation allegations and
damages. See WFAA-TV, Inc. v. McLemore, 978 S.W.2d 568, 571 (Tex. 1998) (“To
maintain a defamation cause of action, the plaintiff must prove that the defendant: (1)
published a statement; (2) that was defamatory concerning the plaintiff; (3) while
acting with either actual malice, if the plaintiff was a public official or public figure,
or negligence, if the plaintiff was a private individual, regarding the truth of the
statement.”).
          But RFI did not plead, nor did it request a jury question on, defamation. 
Rather, RFI pleaded and had the trial court submit jury questions on former article-21.21 violations and on breach of contract. As for the former, the jury found (to
summarize) that the Fund misrepresented the terms, benefits, or advantages of the
policies; made an assertion, representation, or statement regarding insurance that was
untrue, deceptive, or misleading; misrepresented the policies either by making an
untrue statement of material fact or by failing to state a material fact that was
necessary to make other statements not be misleading; made a statement in such a
manner as to mislead a reasonably prudent person to a false conclusion of a material
fact; and failed to disclose coverage terms. As for the latter, the jury found that the
Fund failed to comply with the provisions relating to premiums or audits.
          Simply put, RFI’s evidence showed no connection between the acts for which
the jury found the Fund liable and the damages that it also found, given RFI’s
causation and damages evidence. There is no connection between, for example, the
Fund’s not telling RFI or its agents how audits would be conducted or what criteria
would be used to determine if premium was owed for subcontractors’ employees and
the demise of RFI’s business, when the evidence showed that RFI’s demise resulted
from the Fund’s alleged defamatory statements to RFI’s customers. Proper damages
for the liability theories that RFI asserted might be, for example, the premiums that
RFI actually paid after it was tricked into purchasing coverage that it would not
otherwise have purchased had the Fund not made these misrepresentations. Or, if the
Fund had actually collected additional premiums based on an invalid theory that
Brazos was not independent, then RFI could have had the Fund disgorge those
additional premiums. Or, if the Fund had actually re-audited RFI as part of its
investigation under an invalid theory that Brazos was not independent, then RFI could
have sought the value of its employees’ time that was expended in participating in the
re-audit.
          But those are not the damages that RFI sought. Indeed, the Fund never
conducted the re-audits or billed RFI for additional premiums. Rather, RFI sought
and recovered damages that occurred because of the Fund’s informing RFI’s
customers of the Fund’s fraud, RICO, and other allegations against RFI. We hold
that, as a matter of law, there is not a sufficient connection—given RFI’s theories, its
evidence of liability and damages, and the jury’s liability findings—between the acts
or omissions that the jury found and the particular damages that it also found.
          We sustain these challenges under issues one and two.
F.      Conclusion
          We sustain the Fund’s challenges under issues one and two to all of the jury’s
damages awarded under either cause of action (jury questions 2 and 8) for the reasons
set out above and to the Fund’s challenges to the jury’s liability findings (jury
questions 1 and 7) to the extent that those findings were based on the Fund’s
statements made in the context of litigation. Given this disposition, we need not
reach the remaining challenges under the Fund’s issues one and two,


 issue three
(error in admission of testimony of injury personal to the Fergusons and their family,
rather than to RFI), and issue four (arguing that court erred in awarding attorney’s
fees to RFI because fees were not properly segregated).



IV. The Fund’s Attorney’s Fees
          The jury awarded the Fund $165,551 for trial, $55,184 for appeal to our Court,
and $0 for appeal to the Texas Supreme Court—for a total of $220,735 in attorney’s
fees. In its judgment, the trial offset the amount of trial fees awarded to the Fund
($165,551) from the jury’s award to RFI, also providing that, should the Fund prevail
on appeal, the Fund would be entitled to an additional credit of the amount of
appellate fees awarded to it ($55,184) against the amount awarded to RFI. In issue
five, the Fund argues that, as a matter of law, it established its right to $676,546 in
fees for trial, $100,000 in fees for appeal to our Court, and $50,000 in fees for appeal
to the Texas Supreme Court—for a total of $626,546 in attorney’s fees. 
          The Fund’s challenge rests on the uncontradicted testimony of David Rowe,
one of the Fund’s trial attorneys, as to the reasonableness and necessity of fees and
expenses. Rowe testified as to the hours that his firm had expended in the case, his
firm’s attorneys’ and paralegals’ hourly rates, the difficulty of the case, and the
amount of the firm’s out-of-pocket expenses (about $96,000) in the suit and opined
that, calculated at an hourly rate, a total amount of $626,546 in attorney’s fees was
reasonable and necessary. However, Rowe also testified about the contingency
contract that his firm had with the Fund. Rowe testified that the contingent-fee
contract was for one-third of the total recovery through trial, increasing to 40 percent
in the event of an appeal, with reimbursement for out-of-pocket expenses. Rowe
further testified as follows:
Counsel:So, the fee arrangement, the contingency-fee arrangement
and those—that amount of fees, in conjunction with the
expenses that you explained, in your opinion, are those
reasonable fees and expenses to handle this particular case?
 
Rowe:Absolutely. Actually, they’re very reasonable from the
client’s perspective. On a simple case like a car wreck, dog
bite, or something like that, a typical fee agreement would
be, say, 25 percent to a third, and we have a third of this
case. On more complicated business dealings, a contingent
fee agreement, first of all, is the exception rather than the
norm. Most people bill by the hour for this kind of case. 
And those lawyers that do take these on contingent fee
bases will often charge 40 and even 50 percent contingent
fee. So, the fact that, you know, comparing our one third
fee to what some of the other lawyers might charge as a
contingent basis or similar kind of work, leads me to
conclude that our fees are reasonable.
 
Counsel:Is there another way that you look at fee arrangements?
 
Rowe:One of the things that you want to do or [sic] required to do
when you’re comparing with other fee arrangements, is to
compare it. I used the example, if we win a million dollars,
and a guess, a third fee. If it only took us 20 minutes of
time to get the million dollars, it wouldn’t be reasonable
for us to recover a [$]333,000 fee. You always have to
measure that against your actual investment in this case,
which I’ve done.

Rowe then testified as to the hours that his firm had expended in the case and the total
amount of fees that his firm generated based on an hourly rate. The following
exchange then completed Rowe’s direct testimony:
Counsel:Are both measures of fees, the contingency fee figure and
the hourly rate figure customary in the State of Texas for
this type of work? 
 
Rowe:Yes, they are. . . .
 
Counsel:And is it your opinion that both numbers represent a
reasonable fee for work on this case?



 
Rowe:Yes, whether the—y’all were to consider the cost of the
fees on an hourly basis or the contingent fee basis, either
one would be, in my opinion, a reasonable and necessary
attorney’s fee for the amount of work that we’ve done for
our client.

(Emphasis added.) In its closing argument, the Fund reiterated that the jury could use
either method to calculate its attorney’s fees, although it also requested that, if the
jury used the contingency-fee method, that the jury take into consideration the out-of-pocket expenses in assessing fees.
          The court’s charge instructed the jury that, in determining what reasonable
attorney’s fees to award the Fund, it had to consider the following factors:
a.the time and labor involved, the novelty and difficulty or the
questions involved, and the skill required to perform the legal
services properly;
 
b.the likelihood that the acceptance of the particular employment
preclude[d] other employment by the lawyer;
 
c.the fee customarily charged in the locality for similar legal
services;
 
d.the amount involved and the result obtained;
 
e.the time limitations imposed by the client or the circumstances;
 
f.the nature and length of the professional relationship with the
client;
 
g.the experience, reputation, and ability of the lawyer or lawyers
performing the services; and
 
h.whether the fee is fixed or contingent on results obtained or
uncertainty of collection before the legal services had been
rendered.

See Tex. Disciplinary R. of Prof’l Conduct 1.04, reprinted in Tex. Gov’t Code
Ann., tit. 2, subtit. G app. A (Vernon 2005) (Tex. State Bar R., art. X, § 9)
(establishing similar criteria to be considered in determination of reasonableness of
attorney’s fee).
          The amount of fees that the jury awarded—both for trial and for
appeal—totaled $220,735. That total amount is almost exactly 40 percent of the
recovery that the jury awarded the Fund: 40 percent of $551,836 is $220,734.40,
which is only 60 cents less than the total amount of attorney’s fees that the jury
awarded the Fund. Rowe told the jury that it could consider either the hourly rate or
the contingency-fee contract in determining the amount of attorney’s fees to award,
and Rowe opined that his firm’s 40-percent contingency interest was both reasonable
and necessary. He backed up this opinion with testimony that, for example, the case
was difficult; the case involved many hours’ work, sometimes in short time frames;
and the contract’s contingent percentage interest was less than that usually requested
in the locality for similar cases. Additionally, the percentage amount that the jury
awarded did not exceed the dollar amount that Rowe suggested be awarded if the jury
chose to award fees on an hourly basis, rather than as a percentage interest in the
recovery. This testimony sufficed to prove the reasonableness and necessity of
attorney’s fees in the amount of counsels’ percentage interest under its contingency
contract with the Fund. See Aquila Southwest Pipeline, Inc. v. Harmony Exploration,
Inc., 48 S.W.3d 225, 241 (Tex. App.—San Antonio 2001, pet. denied) (in case post-dating Arthur Andersen & Co. v. Perry Equip. Corp, holding that sufficient evidence
supported jury’s fee award in contract-breach case when claimant’s counsel testified
to his contingent-fee interest and described, among other things, his work, the number
of hours worked, and the hourly rate for his work, were he to charge an hourly rate);



see Arthur Andersen & Co. v. Perry Equip. Corp., 945 S.W.2d 812, 818 (Tex. 1997)
(concluding that contingent-fee agreement alone cannot support fee award under
Deceptive Trade Practices–Consumer Protection Act and that claimant must also give
evidence of factors identified in Disciplinary Rules 1.04, so that jury has meaningful
way to determine reasonableness and necessity of those fees). Because the jury’s
finding on attorney’s fees comports with the contingency-fee amount, there was some
evidence to support that jury finding, and the Fund cannot be said to have proved
conclusively a higher amount of fees. 
          The Fund relies on a line of authority holding that, when the amount and
reasonableness of attorneys’ fees is supported by uncontroverted, clear, direct, and
positive testimony from an interested witness, the amount is established conclusively,
and judgment may be rendered in that amount. See, e.g., Brown v. Bank of Galveston,
Nat’l Ass’n, 963 S.W.2d 511, 515 (Tex. 1998); Ragsdale v. Progressive Voters
League, 801 S.W.2d 880, 882 (Tex. 1990). But, as we have already discussed, the
evidence of attorney’s fees was not conclusively proved as being in the greater
amount. Rather, the Fund’s own evidence—which the Fund offered to the jury as an
alternative method of calculating reasonable and necessary attorney’s
fees—controverted the amount that the Fund now seeks. 
          The Fund responds that the evidence of its counsel’s contingency-fee interest
could not, as a matter of law, controvert counsel’s testimony of a specific dollar
amount calculated on an hourly basis because fees must be measured by the amount
reasonably necessary to represent a party, rather than by the amount that counsel may
actually be paid. However, the case that the Fund cites in support is distinguishable:
in it, there was no testimony, as there is here, that the contingent-fee interest was
reasonable and customary. See Cale’s Clean Scene Carwash, Inc. v. Hubbard, 76
S.W.3d 784, 787-88 (Tex. App.—Houston [14th Dist.] 2002, no pet.).


 Indeed, the
reasoning of the Hubbard court highlights this distinction:
To demonstrate that the testimony of Hubbard’s attorney was not
conclusive, Cales relies on cross-examination testimony that the amount
that would actually be paid to Hubbard’s lawyer under the contingent
fee agreement was uncertain and would likely differ from the amount
Hubbard was requesting to be awarded. Again we disagree. Although
there is no single amount of attorney’s fee that would have alone been
reasonable, the amount requested by Hubbard and awarded by the trial
court was the only one for which testimony was elicited in this case to
show its reasonableness. In the absence of testimony controverting or
impeaching the reasonableness of that amount or showing the
reasonableness of a competing amount (such as the contingent fee
amount), the mere fact that Hubbard’s lawyer would actually be paid a
different amount than that awarded does not controvert, impeach, or
otherwise render inconclusive the evidence showing the reasonableness
of the amount awarded. 

Id. at 788 (emphasis added). The supporting testimony of the contingency interest’s
reasonableness that was lacking in Hubbard is present here. 
          Moreover, on direct examination, Rowe told the jury that a reasonable and
necessary attorney’s fee could be calculated either on an hourly basis or by a
contingency interest. In closing argument, the Fund reiterated that the jury could use
either method to calculate its attorney’s fees, although the Fund did request that
expenses be added onto the contingency amount, if the jury employed that method. 
The Fund cannot tell the jury that it may award fees on either of two bases and then,
on appeal, challenge the fees that the jury awarded on the ground that the jury chose
one of the bases that the Fund itself suggested.
          We overrule issue five.



V. Conclusion
          We reverse those portions of the judgment awarding any recovery to RFI,
denying the Fund pre-judgment interest, and rendering a take-nothing judgment on
the Fund’s claims on which the jury found for the Fund. We affirm the remainder of
the judgment. We remand the cause to the trial court for entry of a take-nothing
judgment on all of RFI’s claims against the Fund and on its request for attorney’s
fees, for entry of judgment in accordance with the jury’s findings for the Fund on its
claims against RFI, for entry of pre-judgment interest for the Fund, and for the
opportunity to re-evaluate the assessment of costs of court and to assess said costs.



                                                                        Tim Taft
                                                                        Justice

Panel Consists of Justices Taft, Keyes, and Hanks.